THE STATE OF IOWA v. MULLEN.

1. **Jurisdiction:** IN COUNTIES BORDERING ON THE MISSISSIPPI RIVER. The district court of the State in counties bordering on the Mississippi river, have jurisdiction of offenses committed anywhere on the waters thereof, although such offenses were committed beyond the *medium filum aqua* and near to the lands of a coterminous State.

2. —— A person may be tried in our courts for keeping a house of ill-fame on a boat in the Mississippi river, although such boat may, when so used, for a portion of the time, as the water recedes, rest on the soil of an island, and on the east side thereof, near to the Illinois shore.

3. —— They also have jurisdiction to abate a nuisance caused by and on such boat, even when resting on the island in the manner above stated. Such power is essential to the exercise of the jurisdiction given to Iowa by the act of congress admitting her as a State 5 U. S. Stat. at Large, 742.

4. **Nuisance:** HOUSE OF ILL-FAME. The words "house of ill-fame," as used in the statute punishing the keeping thereof as a nuisance, will properly include a boat on the river, when used as a habitation for such purposes.

*Appeal from Lee District Court.*

WEDNESDAY, OCTOBER 22.

AT the February term, 1872, of the Lee district court, the defendant was indicted, tried and convicted of the crime of nuisance, committed by keeping a house of ill-fame, called a "gun-boat," resorted to for purposes of prostitution and lewdness.

The court, upon conviction, fined the defendant $1,000, and ordered the seizure and abatement of the nuisance. Defendant appeals.

The necessary facts are stated in the opinion.

*Lee R. Seaton* for the appellant.

The State of Iowa v. Mullen.

*M. E. Cutts, attorney-general, D. W. Sprague, district-attorney,* and *John Gibbons,* for the appellee.

DAY, J. — The main question made by appellant, and the only one to which we need direct special attention, respects the jurisdiction of the district court of Lee county over the offense charged. The boat in question came up the Mississippi river, and for several months prior to the finding of the indictment had been resting on the ground on the east side of an island east of the main channel of the river. It was run in for repairs, and was left aground by the receding of the waters, though at times it was afloat. At the time of trial it was on the ground, but there was ice on both sides of it. When the water is high it covers the island. A portion of the channel of the river, from 150 to 300 feet in width, flows on the east or Illinois side of the island, and, in a good stage of water, the St. Louis packets sometimes pass on that side. When the water is low there is no current east of the island, although there is water. The court instructed the jury as follows: " If the boat or water craft, mentioned in the indictment, and described by the use of the name " gun-boat," was constructed for the purpose of floating it from point to point upon the Mississippi river, and for the purpose of using it as a place of resort for prostitution and lewdness, and if said boat has been kept and used for that purpose upon said Mississippi river, between the Iowa and Illinois shores, and north of the southern boundary line of the State, and south of the north line of Montrose township, in this county, at any time within the three years preceding the finding and presentation of the indictment, then the court charges you that the owners thereof, and those aiding and abetting in the commission of said offense, are amenable to the laws of this State, and the fact that such boat or water

craft is at the present time on the east side of the main channel of the Mississippi river resting temporarily in the rear of the island, in the river, because the water has receded from it, or for purposes of repair will not take it out of the jurisdiction of the court over it, and over its owners and inmates."

The giving of this instruction, and the refusal to give those asked by defendant, involving an opposite doctrine, are assigned as error.

The act of congress for the admission of the State of Iowa into the Union contains the following provision : " That the State of Iowa shall have concurrent jurisdiction on the river Mississippi, and every other river bordering on the said State of Iowa, so far as the said rivers shall form a common boundary to said State and any other State or States now or hereafter to be formed, bounded by the same." * * * Revision, page 965 ; 5 United States Stat. at Large, 742. Commenting upon this statute, this court, in *Gilbert* v. *Moline Water-Power and Manufacturing Co.*, said : " Injuries are inflicted upon persons and property, by persons while *on the river*, for which they should be held answerable, criminally as well as civilly. If jurisdiction in all such cases was made to depend on the inquiry, whether the boat or vessel was on the one side or the other of the main channel; whether the injury was inflicted or crime committed east or west, or north or south of such line, it can be readily seen that it would be frequently almost impossible to determine such jurisdiction, and that a mistake in this respect would prove fatal to the action or prosecution. And hence the reason of making the jurisdiction concurrent in all such cases." 19 Iowa, 319.

Pursuant to this act of congress the Revision, chapter 1, section 3, provides that : " The State has concurrent jurisdiction on the waters of any river or lake which forms a common boundary between this and any other

State." Under this legislation it must, we think, be con-
ceded that the State of Iowa has jurisdiction to punish a
crime committed on the Mississippi river, opposite its
eastern boundary and east of the middle of the main chan-
nel. The question which arises under this instruction is:
Does this jurisdiction exist under the facts therein stated?
In other words, does the fact that the boat at the time of
indictment and of trial was on the east side of the main
channel of the river, resting temporarily in the rear of
the island, because the water had receded from it, or for
repairs, take it out of the jurisdiction of this State? It
seems to us clearly that it does not. In the eye of the
law a crime committed on the boat under the circum-
stances stated, is as much an offense perpetrated *on the
river*, as though the vessel were at the time afloat. If it
is not so it follows that if a vessel navigating the Mississippi
river should run aground east of the middle of the main
channel, and the water should recede, leaving it upon the
ground temporarily, the State of Iowa would have no
jurisdiction over a crime committed upon it under such
circumstances, and hence would arise the question so dif-
ficult of determination, and which it was the purpose of
the act of congress above cited to avoid, whether the act
in question was committed one foot east or one foot west
of the *medium filum aquae*.

Further it is claimed that the boundary of Lee county
on the east is co-extensive with that of the State, which is
the middle of the main channel of the Mississippi river,
and that the local jurisdiction of the district court is of
offenses committed in the county in which it is held, and
that the district court has no jurisdiction to try an offense
committed without the boundary of the county, to wit,
east of the middle of the main channel of the Mississippi
river. If this be true it amounts to this: That congress
has conferred upon the State, and the State, by positive
statute, has assumed a jurisdiction which it has vested in no

court, and for which it has provided no means of making effective. That the State possesses a jurisdiction which is vested in no department of the government is a proposition which involves a contradiction. But general jurisdiction for the trial of crimes is vested nowhere unless it be in the district court. Congress having granted to the State of Iowa jurisdiction concurrent with the State of Illinois over the Mississippi river, jurisdiction over so much of the river as lies opposite to any county on the eastern boundary of the State must attach to such county as an incident of its organization. For it is only through the medium of county organizations that this jurisdiction can be rendered availing, and it is a familiar doctrine that the grant of a right or power carries with it as an incident every thing necessary to make the power or right effective. A cognate question to the one now under consideration arose in *Mahler* v. *Transportation Co.*, 35 N. Y. 352. In that case it was suggested that if the State of New York owned to the center of Long Island Sound, that portion covered by water was not divided into counties. But the court said : "We think there is no force in the suggestion. Even if the statute in declaring the bounds of the counties bordering on the sound, had limited them, in terms, to the line of low water, it would indicate nothing but the mere fact that the legislature deemed their extension to the exterior water line of the State, as a matter of no practical importance." And it was held that whether the actual boundaries of the counties did or did not extend beyond low-water mark, still such counties comprehended within their jurisdiction the water between their respective shores and the water line of the State, to wit: the water lying beyond their actual boundaries, but within the jurisdictional line of the State. And the court said : "This is the usual and reasonable rule in the political apportionment of territory, for the purpose of fixing the limits of civil and criminal jurisdiction."

But this question is not left without legislative determination. Upon the 24th of July, 1840, the following statute was approved: "Whereas doubts have arisen whether the jurisdiction of the several counties in the Territory of Iowa that front upon the Mississippi river extends to the eastern shore of said river, concurrently with any other State or Territory, under the act of congress approved March 30, 1839, chapter 91, therefore, be it enacted by the council and house of representatives of the Territory of Iowa, that from and after the passage of this act all the counties in this Territory that are now formed, or which may hereafter be formed in any part of said Territory, fronting eastward upon the Mississippi river, shall have and exercise jurisdiction for all civil and criminal purposes upon the Mississippi river, concurrently with any other conterminous State or Territory, so far and to such extent as the said river shall form a common boundary between the Territory of Iowa and any other such conterminous State or Territory." Revised Statutes of 1843, page 300. Section 2, article 12 of the first constitution of the State of Iowa, continued this statute in force by the following provision: "All the laws now in force in this Territory, which are not repugnant to this constitution, shall remain in force until they expire by their own limitations, or be altered or repealed by the general assembly of this State." The new constitution, article 12, section 2, contains a similar provision. If this statute has ever been repealed, it is by implication.

Section 28 of the Code of 1851, 31 of the Revision of 1860, is as follows: "All public and general acts passed prior to the present session of the general assembly, and all public and special acts, the subjects whereof are revised in this Code, or which are repugnant to the provisions thereof, are hereby repealed, subject to the limitations, and with the exceptions herein expressed." The subject of the statute of 1840, above quoted, is "the jurisdiction of

the several counties in this Territory that front upon the Mississippi river."

The Code of 1851, chapter 157, and the Revision of 1860, chapter 189, provide generally for the local jurisdiction of the trial of public offenses. But in neither Code, nor in any act of the legislature, can be found any provisions specially defining the jurisdiction of the counties fronting upon the Mississippi river. We therefore conclude that the statute is still in force.

It follows that the court did not err in charging that the district of Lee county had jurisdiction over the offense charged.

II. The court instructed the jury that the facts stated do not exclude the jurisdiction of the court over the boat, and, in the judgment rendered, directed that the property be seized by the sheriff and sold, and that the proceeds be applied to the payment of the fine imposed, and that the nuisance be abated. The appeal presents for review the correctness of this order. The Revision (§ 4413) provides, that when upon indictment any person is adjudged guilty of a nuisance, the court before whom the conviction is had, in addition to imposing a fine, may order that the nuisance be abated. One mode of abatement is to order the seizure of the property in which the nuisance is perpetrated, and its sale for the payment of the fine and costs.

Without the power thus to abate the nuisance, the power to try the offender and impose a fine would often be barren of any beneficial results. If this boat is so upon the river that the person maintaining it there is amenable to the laws of this State, and our courts have jurisdiction to try and punish him for keeping a nuisance, it is a logical sequence that this jurisdiction must draw after it every thing necessary to make it effective and complete. We must either concede the right to abate the nuisance, or deny the right to try and punish the defendant for maintaining it.

A denial of the "drop of blood" is equally a denial of the "pound of flesh." It is claimed, that to allow the officers of this State to seize this boat would work an invasion of the sovereignty of the State of Illinois. If the defendant may be tried by the courts of this State for an act done upon the boat, it must follow that the officers of this State may arrest him upon the boat for the purpose of bringing him before the court for trial. It would be inconsistent to say that the *locus* of a crime is within the jurisdiction of a court for the trial of an offense, and yet beyond it for the arrest of the offender. If the officers of this State may lawfully go upon the boat for the arrest of the defendant, why may they not lawfully do so for the seizure of the boat itself? If one is not an invasion of the sovereignty of the State of Illinois, why is the other?

We are referred to the case of *Gilbert* v. *The Moline Water-Power and Manufacturing Co.*, 19 Iowa, 319. That this case was rightly decided, under the facts presented, admits of no question. It was an action in the courts of this State to restrain, by injunction, the defendants from continuing a dam across the south or slough channel of the Mississippi river, from the head of Rock Island, which is in the State of Illinois, to the main shore in said State. It was held that this dam was not *on the river*, in the sense of the act of congress and that the courts of this State had no power to decree its removal as a nuisance. The same principle was involved in *M. & M. R. R. Co.* v. *Ward*, 2 Black. 485. The dam in question rested permanently upon the soil of the State of Illinois, and was attached to the main shore. It became a part of the realty of the State, and might well be said not to be *on the river* in such sense as to subject it to the jurisdiction of this State. But in the case at bar the facts are very different. The boat was constructed, not for the purpose of being permanently attached to the soil, but of floating upon the surface of the river. It was afloat or aground as

The State of Iowa v. Mullen.

the waters rose or receded. When it settled down upon the soil in consequence of the recession of the water it did not become real estate. It rested upon no foundations. It had no fixed location. With every rise of the river it floated. Hence, it was *on the river* in a sense very different from the dam considered in the case above cited. And if on the river, it became subject to the jurisdiction of this State concurrently with that of the State of Illinois, and the judgment of the court was right.

III. It is suggested that the keeping of a boat or vessel of ill-fame does not constitute the crime of nuisance as defined in section 1411 of the Revision, which punishes the keeping of *houses* of ill-fame for the purpose of prostitution and lewdness. But the point seems not to be relied upon with any degree of confidence, and it needs but a passing notice. The evidence shows that the structure in question is a flat-boat with a cabin built on it, well finished and protected from the water; that men and women lived in it, and that the defendant and others ate and slept there. The following is Webster's definition of a house: "In *a general sense*, a building or shed intended or used as a habitation or shelter for animals of any kind; but *appropriately*, a building or edifice for the habitation of man; a dwelling-place, mansion or abode for any of the human species. It may be any size, and composed of any materials whatever."

It is needless to argue that the term is comprehensive enough to include the structure described in the evidence.

We discover no error in the action of the court.

Affirmed.