MILLARD F. COOLEY, Appellant, v. JAMES F. GOLDEN et al., Respondents.

Kansas City Court of Appeals, January 2, 1893.

1. State Boundary: PLATTE PURCHASE ACT: MISSOURI RIVER. The act of congress of June 7, 1836, extending the jurisdiction of the state of Missouri over the lands lying between its western boundary and the Missouri river carried the western boundary of the state to the center of the channel of the river.

2. ——: CHANGE OF CHANNEL: OF BED. When a river is declared to be the boundary between states, although it may change imperceptibly from natural causes, the river as it runs continues to be the boundary; but, if the river suddenly change its course or desert its original channel, the boundary remains in the middle of the deserted bed.

3. State Jurisdiction: CONCURRENT OVER MISSOURI RIVER, NOT OVER DESERTED BED. The state of Missouri has concurrent jurisdiction over the entire channel of the Missouri river, while it forms a common boundary of this state and Nebraska, but when the river abandons its channel the jurisdiction extends only to the boundary line, the middle of the old channel before the change.

4. ——: FORCIBLE ENTRY. The concurrent jurisdiction over a river forming a common boundary is not believed to confer authority upon one state to bring forcible entry and ejectment for the recovery of land within the limits of the other.

*Appeal from the Atchison Circuit Court.*—HON. CYRUS A. ANTHONY, Judge.

AFFIRMED.

*Lewis & Ramsay*, for appellant.

(1)   The court erred in refusing to give instruction number 4 to the effect that in the absence of other evidence the middle of the main channel would be presumed to be in the middle of the river bed, that is, half way between the Missouri and Nebraska shores, as they existed at time of cut-off. The center of the channel is the boundary. See act April 19, 1864, admitting Nebraska, 13 United States Statutes, 47; 2 Brightly's Digest, p. 340; Angell on Watercourses [Ed. 1869] sec. 10, p. 16, note 2; Angell on Watercourses, sec. 101; *Alabama v. Georgia*, 23 How. 515; *Missouri v. Kentucky*, 11 Wall. 395; *Jones v. Soulard*, 24 How. 41; *St. Louis v. Rutz*, 138 U. S. 226–257; *Smith v. Public Schools*, 30 Mo. 290. Under all the evidence there is scarcely a question but that the land in controversy is on that half of the old bed lying on

the Missouri side of the center of the river. (2) The court erred in not giving instructions 5 and 6, asked by plaintiff, for the reason that the state of Missouri had concurrent jurisdiction with the state of Nebraska over the whole of the old bed of the Missouri river. See act of Congress, March 6, 1820, authorizing admission of Missouri; *Swearingen & Covill v. Steamboat,* 13 Mo. 519; *Sanders v. Anchor Line,* 97 Mo. 26. See also constitution of Missouri, article 1, section 1. The reasons for this jurisdiction are, if possible, stronger than when the river ran there. The boundary line is more uncertain, and violations of law far more frequent in this old bed of the river than when the water ran there.

*Malcolm & McKillop,* for respondents.

(1) The middle of the channel is the boundary line between Missouri and Nebraska. The mai.. channel is the place where the water flows at ordinary stages, and does not include the flats and sandbars over which the water extends in times of high water. *Alabama v. Georgia,* 23 How. 505–515; *Handley's Lessees v. Anthony,* 5 Wheat. 375. The main channel according to the testimony was north of the lands in controversy in 1867, at the time of the cut-off. The center of that main channel was at that time the boundary between Missouri and Nebraska. Constitution of Nebraska, art. 10; *Railroad v. Devereux,* 41 Fed. Rep. 14; *The Schooner Fame,* 3 Mason, 147; *Handley v. Anthony,* 5 Wheat. 374; 7 Opinions Attorney General, 175. That was not changed by the cut-off of 1867. *Missouri v. Kentucky,* 11 Wall. 395; Angell on Watercourses [5 Ed.] sec. 57; Gould on Waters, sec. 159, p. 292; *Holbrook v. Moore,* 4 Neb. 437; *Collins v. State,* 3 Tex. App. 323; *Trustees v. Dickinson,* 9 Cush. 544; *New Orleans v. United*

*States*, 10 Pet. 662; *State v. Young*, 46 Vt. 565. (2) The "concurrent jurisdiction" named by appellant is over rivers, not dry land, and to that effect are the authorities he cites. The center of the main channel of the Missouri river as it was at the time of the 1867 cut-off is the boundary line between Missouri and Nebraska. This boundary is an imaginary line. Up to the line on one side is Missouri and on the other side is Nebraska. Missouri has no concurrent jurisdiction with Nebraska over the territory of that state nor has Nebraska concurrent jurisdiction with Missouri over the lands of the latter. *Land Co. v. Emmerson*, 38 N. W. Rep. 200; Gould on Waters, sec. 158; *Pollard v. Hogan*, 3 How. 212; 27 Fed. Dec., secs. 40, 41, 42, p. 987; *Zinc & Iron Co. v. Canal & Banking Co.*, 15 Atl. Rep. 227; *State ex rel. v. Railroad*, 33 Fed. Rep. 752.

SMITH, P. J.—This is an action of forcible entry and detainer which was brought before a justice of the peace of Atchison county.

By the act of congress, approved June 7, 1836, United States Statutes at Large, 34, entitled "An act to extend the western boundary of the state of Missouri to the Missouri river," it was provided that, when the Indian title to all the lands lying between the state of Missouri and the Missouri river should be extinguished, the jurisdiction over said lands should be thereby ceded to the state of Missouri. It is to be observed that the act ceded the land between the old state line and the river, and the extension of the boundary was to the river, not to the bank, thus making the natural watercourse the boundary; and the general rules, construing such words of cession as shown by the adjudged cases, carry that boundary to the center of the channel. *Benson v. Morrow*, 61 Mo. 345; *Jones v. Soulard*, 24

How. 41; *Howard v. Ingersoll*, 13 How. 381; *Railroad v. Devereux*, 41 Fed. Rep. 14; *Missouri v. Iowa*, 7 How. 660. And this seems to have been the intention of congress; for it will be seen by reference to the act providing for the admission of the territory of Nebraska into the Union that one of the boundaries of the state so admitted should be from the junction of the Niobrara river down the middle of the channel of the latter river following the meanderings thereof, etc. 13 United States Statutes at Large, 47. It would be unreasonable to suppose that congress intended to limit the extension of the territorial jurisdiction of the state of Missouri to the bank of the Missouri, and thus leave a sort of neutral territory between the Missouri shore and the middle of the channel of the river over which neither the states of Missouri nor Nebraska had jurisdiction.

The constitution of Missouri, section 1, article 1, declared that the boundaries of the state as heretofore established by law are hereby ratified and confirmed; so that it is not to be doubted that congress by the ceding act extended the northern boundary line of the state to the middle of the channel of the Missouri river, and from thence down the river to the middle of the Kansas river. Act of congress of March 6, 1820, for the admission of Missouri; Revised Statutes, 1889, 47. In the cession act of June 7, 1836, is embraced what is commonly known as the "Platte purchase," consisting of a number of counties, among which is Atchison, situate in the northwest corner of the state.

At the time of the cession and until the year 1867, the Missouri river in its course along the western boundary of Atchison county made a horseshoe-shaped bend, with toe to the east, and heel pointing to the west. During the spring of the last-named year the river, during a great flood, changed its course by effecting a channel across the heel of the bend and thus

abandoned its former channel around the bend. The bend became a lake and gradually filled up with sedimentary matter until it became solid land fit for tillage and pasture. The land, the possession of which is in dispute in this suit, is situate in the old abandoned bed of the river in this bend. The decisive questions in the case arise on the instructions given and refused by the court.

The theory of the plaintiff's instructions which were refused by the court was to the effect that if the lands in dispute were situate in the old bed of the river which had become dry on account of the change of its course by cutting off a bend on the Nebraska side and forming a new channel, then in that case it was not material on which side of the main channel of the old river bed the lands in dispute were situate. The theory of the defendant which was adopted by the court was that the ordinary boundary of Atchison county where it borders on the Missouri river extended to the middle of the main channel of the river as the main channel ran or was located in the year 1867 prior to the change or cut-off, and that, unless it was found the land in question was situate in Atchison county, the plaintiff could not recover. The defendant's theory further was that the boundary line of the state of Missouri at the location in question was the middle of the main channel of the Missouri river as the main channel ran before the cut-off in 1867. These theories are wholly irreconcilable. The jury found under the instructions that the land in dispute was not in Atchison county, and, as there was substantial testimony tending to establish that fact, the finding is conclusive upon us. It seems that the river by its changed course cut off a considerable area of land which was formerly on the Nebraska side, but is now on the Missouri side of it, so that the river as it runs along

the western border of this area of cut-off land is wholly within the state of Nebraska.

It is not contended, as we understand it, that the change of the course of the river in 1867 effected a change of the boundary line between the two states as it was fixed in the ceding act, for, if it were, such contention could not be sustained, because it is plain to be seen that the allowance of such consequences might result most disastrously to the geography of the state. The law seems to be well settled that when a river is declared to be the boundary between states, although it may change imperceptibly from natural causes, the river as it runs continues to be the boundary. But, if the river should suddenly change its course or desert the original channel, the rule of law is, the boundary remains in the middle of the deserted river bed. *Iowa v. Nebraska,* 143 U. S. 359; *St. Louis v. Rutz,* 136 U. S. 225; *Missouri v. Kentucky,* 11 Wall. 395; *Butterworth v. Bridge Co.,* 123 Ill. 535; *Holbrook v. Moore,* 4 Neb. 437; *Collins v. State,* 3 Tex. App. 324; Gould on Waters, sec. 159.

But the real question is whether the states of Missouri and Nebraska have concurrent jurisdiction over the old bed of the river just as was the case when the river ran there before 1867. The jurisdiction of this state over that part of the river which forms a common boundary of the states is concurrent. It extends not only to the middle of the channel but over the entire channel. Constitution, art. 1, sec. 1; *Swearingen v. Steamboat,* 13 Mo. 519; *Sanders v. Anchor Line,* 97 Mo. 26. But here there is no river, but in its stead is dry land upon which are cultivated fields and pastures. The physical conditions have been changed. Is the case different than if the boundary line between the two states had been located originally on dry land instead in the middle of the channel of the river? We

think not. The concurrent jurisdiction of the states of Missouri and Nebraska under their enabling acts does not in any case extend beyond their common boundary, except when that boundary is the middle of the channel of the Missouri river. Congress has imposed this limitation upon its existence. It is difficult to see why it exists here any more than if the river had always run where it did after 1867. The reason for the grant of this concurrent jurisdiction, which is so well and forcibly expressed by Judge BARCLAY in 97 Mo., *supra*, lends no support to plaintiff's claim of concurrent jurisdiction in this case. The conditions are wanting which constitute the basis of this jurisdiction. The boundary line between the states is the middle of the former bed of the river, and to this line the jurisdiction of each extends, but the concurrent jurisdiction along there disappeared when the river did.

It is not believed that it was contemplated by congress or the states that the grant of concurrent jurisdiction of the two states on the river authorized the bringing of an action of forcible entry and detainer or of ejectment in this state for the recovery of lands situate anywhere within the territorial limits of Nebraska. We cannot sustain the theory of the plaintiff's instructions which were to that effect. We do not think that the elimination by the court of a part of the plaintiff's fourth instruction was harmful to him, in view of the issues submitted to the jury by other instructions and found adversely to the plaintiff.

The case was fairly submitted to the jury by the instructions of the court. The judgment seems to be for the right party and so will be affirmed. All concur.