THE STATE OF MISSOURI, Respondent, v. JAS. METCALF *et al.*, Appellants.

Kansas City Court of Appeals, March 23, 1896.

1. **Appellate Jurisdiction**: SUPREME COURT: COURT OF APPEALS. Where on a motion the supreme court transfers the cause to a court of appeals on the ground of the latter's jurisdiction, the latter court will not retransfer the case to the supreme court on the ground that the record discloses a constitutional question.

2. **Gaming House**: BOAT. A boat with a cabin equipped with tables, chairs, and such articles and devices as are necessary to carry on a gambling business is included in the term "house" used in the statute against gaming houses.

3. **Jurisdiction**: MISSOURI RIVER: BOUNDARY LINE. While according to general rules of construction the words of the act of congress ceding the Platte purchase to the state of Missouri carries the jurisdiction and boundaries of the state to the center of the main channel of the Missouri river, yet the enabling act admitting the state gives it concurrent jurisdiction over said river with all states lying opposite it, and the Buchanan criminal court has jurisdiction of offenses committed off the shores of Buchanan county though west of the center line of said river.

*Appeal from the Buchanan Criminal Court.*—HON. SILAS WOODSON, Judge.

AFFIRMED.

*Hall & Woodson* and *Brown & Pratt* for appellants.

(1) The indictment alleges the offense to have been committed in Buchanan county. This a material averment (*State v. Welker*, 14 Mo. 398); and it must be proven. *State v. Burns*, 48 Mo. 438. Proof that the alleged offense was committed in Kansas can not certainly sustain the allegation that it was committed in Buchanan county, Missouri. (2) It is not necessary in this case to enter into the much discussed question as to whether the western boundary of that part of Missouri originally included in the Platte purchase is at the eastern bank of the Missouri river, according to the terms of the act of congress ceding it to the state of Missouri (5 U. S. Stat. at Large, 34), or at the middle of the main channel of that river, as defined in the amendment to the state constitution adopted at the session of the legislature of 1834-5. The court refused to instruct the jury to acquit if the offense was committed west of the middle of the main channel of the river, and instructed that they could convict if it was committed at any place on the Missouri river opposite to and where the river runs along and adjoining the

county of Buchanan. The evidence was undisputed that the boat alleged to have been a gaming house was west of the middle of the main channel of the river, and the defendants were convicted of an offense committed in Kansas. Buchanan county was bounded by the legislature as follows: "Thence down said river, in the middle of the main channel thereof to the place of beginning." R. S. 1889, sec. 2957; *Ex parte Slater*, 72 Mo. 102; *State v. Hatch*, 91 Mo. 568; *State v. Mc-Graw*, 87 Mo. 161. (3) We submit that a boat on a navigable stream, and in no way connected with the shore, is not a house within the meaning of section 3811.

*R. F. Walker, Morton Jourdan, Robert O. McLin,* and *Romulus Culver* for respondent.

(1) Evidence is abundant to establish the fact that defendants were keepers of a gaming house. R. S. 1889, sec. 3817. These defendants could not be convicted of gaming for the reason that they were not gaming, but were in charge of and keeping a gaming house. *State v. Mosby*, 53 Mo. App. 571. (2) There is no variance between the allegations in the indictment and the proof. *Carlisle v. State*, 32 Ind. 55; *Sanders v. Anchor Line*, 97 Mo. 26. Whether or not the offense was committed within the territory embraced by the boundaries of Buchanan county is wholly immaterial, provided that Buchanan county had jurisdiction over said territory. (3) The court did not instruct the jury, as contended by appellants, that if the offense was committed anywhere on the Missouri river, the jury should convict; but did instruct, "If you believe from the evidence that the defendants * * * at a place on and in the Missouri river, opposite to and where said river runs along and adjoins the county of

Buchanan in the state of Missouri," etc., etc. (4) Within the meaning of the statute defining this crime, with which defendants are charged, the word "house" is sufficiently comprehensive to include a "boat." *State v. McMullins*, 35 Iowa, 199. (5) The jurisdiction of a state is coextensive with its sovereignty. *Sanders v. Anchor Line*, 97 Mo. 36. Its sovereignty extends to the limits which have been defined by acts of congress and adopted and ratified by the state itself. *Swearingen v. Steamboat*, 13 Mo. 510; *Sanders v. Anchor Line, supra*; *State v. McMullins*, 35 Iowa 199; *Carlisle v. State*, 32 Ind. 55; *Sherlock v. Alling*, 44 Ind. 184; *Church v. Chambers*, 3 Dana (Ky.) 274. The state of Missouri has original concurrent jurisdiction with the state of Kansas over the whole Missouri river, where it forms a common boundary. Act to authorize the people of Missouri territory to form a Const., etc. R. S. 1889, p. 45, sec. 2; Const. of Mo., R. S. 1889, art 1, sec. 1; *Swearingen v. The Lynx*, 13 Mo. 519; *Sanders v. Anchor Line*, 97 Mo. 26; *Cooley v. Golden*, 52 Mo. App. 229; *Carlisle v. State*, 32 Ind. 55; *Sherlock v. Alling*, 44 Ind. 184; *Church v. Chambers*, 3 Dana (Ky.) 274; *Hundley v. Anthony*, 5 Wheat. (U. S.) 374.

SMITH, P. J.—The defendants, who were indicted, tried, and convicted by the criminal court of Buchanan county for setting up and keeping a common gaming house under the provisions of section 3811, Revised Statutes, have brought the cause here by appeal on the ground, principally, that the offense for which they were convicted was not committed within the territorial limits of this state and that therefore said criminal court had no jurisdiction of the offense.

We may first dispose of the preliminary question of our own jurisdiction raised by the defendants.

They took their appeal to this court as the record informs us, but through inadvertence of the clerk of the criminal court, the duly certified copy of the record was transmitted to the clerk of the supreme court where the same was filed and entered upon the general docket of that court. Later on the attorney general filed a motion in that court to transfer the cause to this court upon the double ground that the offense for which defendants were indicted and convicted was only a misdemeanor and that the record presented no constitutional question, and that therefore the jurisdiction of the cause was in this court and not in that of the supreme court. The motion, it appears, was sustained by the court and the cause ordered to be transferred to this court. .

Now, if the supreme court had been of the opinion that the record disclosed a constitutional question, it would have retained the cause for final determination. This much we must assume. For this reason, we feel constrained to think it is our imperative duty not to transfer the case to the supreme court, but to proceed without needless delay to examine and determine the questions presented by the record.

It is further contended by the defendants that a boat in a navigable stream, in no way connected with the shore, is not a "house," within the meaning of the statute upon which the indictment was found, but to this we can not yield our assent. The evidence shows that the structure in question was a boat with a cabin built on it equipped with tables, chairs, and such other articles and devices as were necessary for carrying on the nefarious business in which the defendants thereon engaged. The defendants occupied the structure day and night and at all times kept it open for the convenience of such persons as desired to play at games of chance. We do not doubt that the term "house," as

used in the statute, is comprehensive enough to include the structure described in the evidence. *State v. McMullins*, 35 Iowa, 199.

As already stated, the main ground of the defendant's appeal is that the offense was not committed within the territory over which the criminal court had jurisdiction. The evidence discloses the fact that the defendants' boat was kept anchored west or on the Kansas side of the middle of the main channel of the Missouri river. If the boat had been anchored on the east side of the middle of the channel, it is conceded that it would have been in that part of the territorial limits of this state, included in the county of Buchanan. So the question really is whether the defendants' boat, at the time specified in the indictment, was situate at a place on the Missouri river subject to the jurisdiction of this state.

Jurisdiction, it has been ruled, as applied to a state, signifies the authority to declare and the power to enforce the law, as well as the territory within which such authority and power may be exercised. The jurisdiction of a state is coextensive with its sovereignity. *Sanders v. Anchor Line*, 97 Mo. 36. In the ceding act of congress of June 7, 1836, is embraced the Platte purchase, which now consists of a number of counties in this state, among which is that of Buchanan. This act ceded the land lying between the old state line and the Missouri river, and extended the northern boundary of the state to the river. The river thus became the natural boundary between the state and the states of Kansas and Nebraska. And according to the general rules of construction, the words of cession of the act, as shown by the adjudged cases, carry that boundary to the center of the main channel of the river. *Cooley v. Golden*, 52 Mo. App. 229; and the cases there cited. Congress, by the ceding act, extended the

northern boundary of the state to the middle of the main channel of the Missouri river and from thence down the river to the middle of the Kaw river.   U. S. Stat. at Large, p. 34.

The enabling act of March 6, 1820 (Revised Statutes 47) provides that this state shall have concurrent jurisdiction on the river Mississippi and every other river boundary in said state and other state or states now or hereafter to be formed and bounded by the same, such rivers to be common to both.   This state, in conformity to the requirements of said act of congress, duly adopted and ratified the boundaries therein defined, for it is asserted by its organic act, that its boundaries as heretofore established by law are hereby ratified and confirmed and that it shall have concurrent jurisdiction on the Mississippi river and every other river bordering on it, so far as said rivers shall form a common boundary to it and any other state or states.   Sec. 1, art. const. Mo., R. S., p. 57.   Congress, by conferring concurrent jurisdiction, intended to declare that, subject to other laws of the United States—transactions occurring anywhere on that river, and on every other river bordering on the state, so far as the same should form a common boundary to it and any other state or states, might be lawfully dealt with by the courts of either according to its laws.   The sovereignty of this state extends to the limits which have been sanctioned by the acts of congress and formally adopted and ratified by the state itself. This is the well settled construction of these acts by the judiciary of this state.   *Swearingen v. Steamboat*, 13 Mo. 510; *Sanders v. Anchor Line*, 97 Mo., *supra; Cooley v. Golden, supra.*

A cognate question has been before the supreme court of Iowa.   In *Gilbert v. Moline W. P. Mfg. Co.*, 19 Iowa, 319, it is said that where injuries are inflicted upon

persons and property by persons while *on the river*, for which they should be held answerable criminally as well as civilly, if jurisdiction in all such cases was made to depend on the inquiry whether the boat or vessel was on one side or the other of the main channel; whether the injury inflicted or crime committed east or west, or north or south of such line, it can be readily seen that it would be frequently impossible to determine such jurisdiction and that a mistake in this respect would prove fatal to the prosecution. And in *State v. McMullins*, 35 Iowa, *supra*, it was said that it is claimed that the boundary of Lee county on the east is coextensive with that of the state, which is the middle of the main channel of the Mississippi river, and that the local jurisdiction of the district court is of offenses committed in the county in which it was held, and that the district court has no jurisdiction to try an offense committed without the boundry of the county, to wit, east of the middle of the main channel of the Mississippi river. If this be true, it amounts to this: That congress has conferred upon the state, and the state, by positive statute, has assumed a jurisdiction which it has vested in no court and for which it has provided no means of making it effective. That the state possesses a jurisdiction which is vested in no department of the government is a proposition which involves a contradiction. But general jurisdiction for the trial of crimes is vested nowhere unless it be in the district court. Congress having granted to the state of Iowa jurisdiction concurrent with that of Illinois over the Mississippi river, jurisdiction over so much of the river as lies opposite to any county on the eastern boundary of the state must attach to such county as an incident to its organization. For it is only through the medium of county organization that this jurisdiction can be rendered availing, and it is a familiar doctrine

that the grant of a right or power carries with it as an incident everything necessary to make the right or power effective.

The reasoning of the Iowa court in these cases, and especially in the latter, whose salient facts are almost identical with those in the present case, is such as commends itself to our approving judgment, so that we feel that we can not do better than to adopt the same since it completely answers the objections urged by the defendants to the jurisdiction of the court in which they were convicted. And we may add that similar rulings have also been made by the Indiana and Kentucky courts of last resort. *Carlisle v. State*, 32 Ind. 55; *Sherlock v. Alling*, 44 Ind. 55; *Church v. Chambers*, 3 Dana (Ky.) 274.

Without pursuing the inquiry further we may say that it seems to us that the defendants were rightly indicted, tried, and convicted in a court of competent jurisdiction, and that there is no merit in their appeal.

It follows that the judgment of the criminal court of Buchanan county will be in all things affirmed. All concur.