<em>Judgment affirmed.</em>

---

## THE WIGGINS FERRY COMPANY

### v.

## GEORGE W. REDDIG.

*Marine Tort—Collision on Mississippi River—Jurisdiction—Action at Common Law—Duty of Steamers—Instructions—Entire Charge—Evidence.*

1. Neither Illinois nor Missouri can exercise exclusive jurisdiction over any part of the Mississippi River, nor is either confined in the exercise of its own jurisdiction to the middle thereof. The two States exercise concurrent jurisdiction on the river for all judicial purposes.

2. Where a steamer, navigating public waters, does not keep out of the

Wiggins Ferry Company v. Reddig.

way and a collision occurs with a flat-boat, the former is *prima facie* liable in the common law courts as well as in the courts of admiralty.

3. An instruction which defines the legal duty of a steam vessel, in the language of the statute and the decisions, can not be held erroneous, although it may not contain all the law applicable to the case.

4. This court will look at the entire charge to see whether the trial court has laid down the law correctly with proper limitations and explanations of abstract propositions therein contained.

5. In an action to recover damages caused by a collision on the Mississippi River near the Missouri shore, between a steam ferry-boat owned by the defendant and the plaintiff's flat-boat, it is *held:* That the court properly excluded evidence of the common law of Missouri, touching contributory negligence; that, from the instructions given, when taken together, the jury could not have concluded that the defendant was absolutely liable, from the mere fact that the collision occurred; and that the evidence sustains the verdict for the plaintiff.

## [Opinion filed October 5, 1887.]

APPEAL from the Circuit Court of St. Clair County; the Hon. B. H. CANBY, Judge, presiding.

The appellee was the owner of a small flat-boat, and while it was floating down the Mississippi River it was struck by a steam ferry-boat belonging to the appellant, and the appellee, who was engaged in operating his flat-boat, was caught between the two boats and received serious injuries, and he brought this action in case in the St. Clair Circuit Court to recover damages therefor. It appears that the collision occurred near the Missouri side of the river. Contributory negligence of the plaintiff was relied upon as a defense to the action and in this connection the defendant below offered to prove " that by the laws of Missouri, that one who sues for damages to his person can not recover if he himself was guilty of negligence, which materially contributed to the injury complained of," which offered proof was rejected by the court and exception saved. The plaintiff below recovered and the defendant appealed.

Mr. CHARLES W. THOMAS, for appellant.

Sec. 563, Rev. Stat. U. S., gives exclusive jurisdiction of all civil causes of admiralty and maritime jurisdiction to the

United States District Courts, "saving to suitors in all cases the right of a common law remedy where the common law is competent to give it."

This action is for a tort committed on the Mississippi River in the State of Missouri, and is a subject of admiralty jurisdiction. The Hine v. Trevor, 4 Wall. 555; Nelson v. Leland, 22 How. 48; The Eagle, 8 Wall. 15; The Propeller Commerce, 1 Black, 574; Leathers v. Blessing, 105 U. S. 626.

The appellee, however, chose to take advantage of the saving clause of the statute and invoke the jurisdiction of the State court to apply a common law remedy.

By so doing he abandoned every advantage he might have had in an admiralty court and submitted himself to be governed exclusively by the modes of procedure and rules of practice and evidence which obtained in the jurisdiction he invoked. Steamboat Co. v. Chase, 16 Wall. 522.

He accused appellant of doing him an injury in the State of Missouri, and brought his action at common law, and thereby gave appellant the right to apply to the case the common law of that State, regarding the degree of negligence which will bar a recovery there.

The appellant on the trial offered to prove by a competent witness that by the common law of Missouri, one suing to recover damages done to his person can not recover if he himself was guilty of negligence which materially contributed to the injury. The court refused to permit the evidence to go to the jury and exception was taken.

The rights of the parties in a suit for a tort depend upon the law of the place where the wrong was done and not upon the law of the place where the suit is brought. Story, Confl. Laws, Sec. 307 d; Smith v. Coudry, 1 How. 32; Mostyn v. Fabrigas, Cowp. 175; Shaver v. White, 6 Munf. 110.

The first instruction given to the jury told them that the law requires a steamboat, under all circumstances, to keep out of the way of a flat-boat. In other words, that no amount of negligence on the part of a person floating along a stream in a flat-boat, would excuse one operating a steamboat in case of a collision. A collision between a steamboat and a flat-boat

does not necessarily render the steamboat liable.    It is proper
to weigh the evidence and examine the facts to ascertain who
was to blame, as in all other cases.    Fretz v. Bull, 12 How.
466.

There was no evidence whatever upon which to base a
material portion of it.    The flat-boat was not floating with the
stream when it was struck.    The appellee himself testified
that it was being propelled by oars, and that his companion
was rowing hard.    This fact in itself deprived appellee of all
the supposed benefit he might have had if he had allowed his
boat to float with the current, and made the instruction doubly
mischievous.    Pearce v. Page, 24 How. 228.

Messrs. FRANKLIN A. McCONAUGHY, J. T. KENWORTHY and
THOMAS C. FLETCHER, for appellee.

Proceedings of the kind at bar, that is, proceedings *in
personam*, against the owner of the vessel for damages for the
negligence of those in charge of the vessel, are expressly re-
served to the State courts by Sec. 9 of the Federal Judiciary
Act of 1789, and the reservation is still more clearly expressed
in Sec. 1 of the Act of February 20, 1845.    It is accordingly,
in general, a matter of election with the injured party, whether
he will seek his redress in the State or the Federal courts.
N. J. Navigation v. Mer. Bk. 6 How. 390.

Where jurisdiction is concurrent, that court which first takes
jurisdiction will hold it exclusively—a rule supported by all
authority, and founded upon reason, and, we may say, on neces-
sity.    Mason v. Piggott, 11 Ill. 85; Smith v. McIver, 9 Wheat.
532; Merrill v. Lake, 16 Ohio, 373; Ross v. Buchannan, 13 Ill.
55; Chittenden v. Rogers, 42 Ill. 100; McNab v. Heald, 41 Ill.
326.

PILLSBURY, J.    The defendant below operates a steam ferry
for the transportation of railroad cars across the Mississippi
River between the City of St. Louis in Missouri and East St.
Louis in Illinois.    On the morning of the collision the appel-
lee was floating down the river in his boat and passed by the
stern of the Sackman, appellant's boat, which was then in her

slip on the Missouri shore, and when a short distance down the river the Sackman backed out of her slip, running down stream in order to go about for the Illinois shore, and in so doing ran into the boat of appellee and injured him. This action was brought as at common law to recover damages for such injury, averring negligence upon the part of defendant in operating its boat and ordinary care upon his own part. It is insisted that the tort, if any be shown, was committed within the limits of the State of Missouri, and that the rights of the parties are therefore to be governed by the laws of that State, and that for this reason the court erred in refusing the offered proof of the law of that State, concerning the effect of the contributory negligence of the plaintiff upon his right of recovery. Conceding for present purposes that the position of appellant, that a tort is so far local as to require the rights of the parties to be determined by the laws of the State or jurisdiction wherein such wrong was committed, we are of the opinion that such principle has no application to this case.

The Act of Congress of June 4, 1812, concerning the Territory of Missouri, provided that the Mississippi and Missouri Rivers and the navigable waters flowing into them, and the carrying places between the same, shall be common highways, and forever free to the people of said Territory and the citizens of the United States, without any tax, duty or import therefor. Following this is the Act of Congress of April 18, 1818, to enable the people of Illinois to form a Constitution and State government, the second section of which defined the boundaries of the State, and fixing its western boundary as the middle of the Mississippi River, with a proviso "that the said State shall have concurrent jurisdiction  *  *  *  on the Mississippi River with any State or States to be formed west thereof so far as said river shall form a common boundary to both." The Enabling Act for the State of Missouri, March 6, 1820, provides (last proviso, Sec. 2): " *And provided also* that the said State shall have *concurrent jurisdiction* on the River Mississippi and every other river bordering on said State and any other State or States, now or hereafter to be formed and founded by the same, such rivers to be *common* to both,

Wiggins Ferry Company v. Reddig.

and that the River Mississippi, and the navigable rivers and waters leading into the same, shall be *common highways and forever free*, as well to the inhabitants of the said State as to the other citizens of the United States, without any tax, import or toll therefor, imposed by the said State." These acts of Congress determine the character of the Mississippi between the State of Illinois upon the east and Missouri on the west to be a common highway over which neither can exercise exclusive jurisdiction, nor is either confined in the exercise of its jurisdiction to the middle of the river, the physical boundary of the State. On the river both States have concurrent jurisdiction for all legal purposes. This jurisdiction thus conferred upon the State is transferred to the several counties bordering upon the river by Sec. 2 of the act relative to counties in the following terms: "Each county bounded by either the Mississippi, Ohio or Wabash River shall have jurisdiction over such river to the extent it is so bounded, which jurisdiction may be exercised concurrently with the contiguous States bounded by such river." This same jurisdiction is recognized in criminal matters by Sec. 460 of the Criminal Code. From these statutes, both National and State, it is apparent that this great river is treated as a highway belonging to neither State, and yet over which each State exercises joint and equal power and authority for all judicial purposes, and to enable them to redress private wrongs or punish crime, the boundaries of each may be said to extend to the farther shore. Either a private or public wrong being committed upon the waters of the river, this common highway of the people, may then be said to be committed within the jurisdiction of either State, and undoubtedly it would be held that the judicial tribunal first taking cognizance of the cause would, under well established and understood principles, retain its jurisdiction to the end of the controversy, applying the law of the *forum* to the facts of the case in settling the rights of the parties. Upon this ground we see no error in the action of the court in refusing to hear proof of the common law of Missouri. But if we are wrong in this conclusion no possible harm could result to appellant from its rejection, as the law of that State, as offered to be

proved, is but a fair statement of the existing law of Illinois upon the same subject, and if the court had been requested to so instruct the jury it would have done so.

Objection is taken to the first instruction given for plaintiff as follows:

The court instructs the jury that "under the law applicable to this case, if you believe from the evidence that the boat of the defendant was propelled by steam, and that of the plaintiff was a flat-boat floating with the current of the stream, then, under the law, the boat of plaintiff had a perfect right to proceed along the said current of the said stream and follow the same, and it was the duty of the boat of defendant to keep out of the way of plaintiff's boat." The specific objection urged to this instruction is that it takes from the jury all consideration of the claimed negligence of the plaintiff, and makes the appellant liable if a collision occurs, under any and all circumstances. The purpose of the instruction was to inform the jury of the duty that was cast upon vessels operated by steam in the navigation of public waters, with respect to vessels not having the advantage of this powerful controlling force. Steamers are so little affected in their movements by wind, tides or currents, that they have no great difficulty in selecting and maintaining any course that may suit those in charge of them. Crafts not thus propelled are not in position to control their movements with equal facility, but are so greatly subjected to these natural influences that it has been found necessary to impose upon the more favored craft in these particulars the burden of exercising a higher degree of care and vigilance to avoid collisions than apply to those of an equal grade or class. These duties have not only been defined by the courts of admiralty, but have been declared by the statutes of the United States. Rule 20 of Chap. 5 of the Revised Statutes of the United States, relating to commerce and navigation, provides that "if two vessels, one of which is a sail vessel and the other a steam vessel, are proceeding in such directions as to involve risk of collision, the steam vessel shall keep out of the way of the sail vessel," and in such case, by Rule 23, the sail vessel has the right to keep her course, hav-

ing a due regard to the perils of navigation or the special circumstances which may exist in the given case, rendering a departure from the rules necessary to avoid immediate danger Speaking of the effect of these statutory rules Mr. Justice Davis, in the case of The Steamboat Carroll v. Green, 8 Wall. 302, which was a case of collision between a steamer and a sailing vessel, said: " The steamer was required to keep out of the way, slack her speed, or, if necessary, stop and reverse, while the schooner was required to maintain her course, and was not justified in changing it unless obliged to do so to avoid a danger that immediately threatened her.   As the steamer did not keep out of the way, and as the collision occurred, the steamer is *prima facie* liable, and can only relieve herself by showing that the accident was inevitable, or was caused by the culpable negligence of the schooner."   This decision was re-affirmed in the case of the " City of Paris," a steamer, against Simmons, the owner of a sailing vessel injured by a collision with the steamer (9 Wall. 634), where it is said that the schooner was pursuing her regular course when she reached the steamer's track, and this she had the right to do, and the duty rested upon the steamer to see her and keep out of her way.   These authorities are clear as to the duty imposed upon steam vessels in navigating public waters, and are no less imperative when the remedy is sought in the common law courts than in the courts of admiralty. The duty is defined by the general law and a violation of this duty is negligence, and if a collision occurs in consequence of such violation liability ensues, unless the party guilty of such act can show such contributory negligence on the part of the plaintiff as to prevent a recovery.   An instruction, therefore, that defines the legal duty of a steam vessel, in the language of the statute and of the decisions, can not be held erroneous although it may not contain all the law applicable to the case in hand.   Race v. Aldridge, 90 Ill. 250.

This is as far as the instruction in question went and did not prevent, as is supposed, the defendant from presenting its requests to the court to have the jury properly advised as to the effect of the alleged negligence of the plaintiff.

The court did indeed give the only instruction asked by the defendant, which must have been considered by the jury in connection with that of the plaintiff, of which complaint is made. That instruction was as follows : " The court instructs the jury that unless the evidence all taken together shows that the servants of defendant were guilty of some particular act or acts of negligence which caused plaintiff's injury, plaintiff can not recover." The jury could not, from these two instructions, have concluded that the defendant was absolutely liable from the mere fact that a collision occurred, but in addition to such fact they must find that " the defendant was guilty of some particular act or acts of negligence which caused plaintiff's injury." As we have seen, the instruction given at the request of the plaintiff correctly defined the duty of the defendant, and that of the defendant required the commission of some specific act in violation of that duty before the liability of the defendant attached for the injury occasioned by the admitted collision between the boats. Thus construed we are of the opinion the law was given to the jury with substantial accuracy so far as responsibility attached to the defendant for the injury, and if the defendant had seen proper to submit to the jury the question whether the plaintiff could have avoided the collision, it could have prepared proper requests for that purpose.

Under our system of instructing juries it can scarcely be expected that every written one shall present all the law of the case. The jury are to be advised as to the law applicable to various branches of the case as well as to the matters involved as a whole, and when the law is correctly given upon any single point or question arising in the case and does not ignore other principles applicable to other branches of the case, but these are also properly stated in other parts of the general charge, such instruction ought not to be held erroneous. McCollom v. I. & St. L. R. R., 94 Ill. 534; Town of Fox v. Town of Kendall, 97 Ill. 72. Such is believed to be the rule in those jurisdictions where the jury is charged orally by the court in one general connected charge and where one part of the charge is held to be modified, limited or explained by

other parts of the same charge.   The true rule would seem to
be that the entire charge is to be looked at by the appellate
tribunal, whether the charge is given orally or in writing, and
if it, as a whole, has laid down the law correctly with proper
limitations and explanations as to abstract propositions con-
tained in it, it is and ought to be sufficient.   Such is the hold-
ing of our own courts.   Northern L. Packet Co. v. Binninger,
70 Ill. 571.   The merits of the case are clearly with the plaint-
iff.   He was floating down the  stream in his boat and he had
a perfect right to be there.   He had passed the dock of the
Sackman quite a distance when she backed out with her stern
down stream and after getting into the river and down stream
a sufficient distance, turned her stern toward the western
shore in order to obtain sufficient room to head for the Illinois
shore and in so doing backed into the plaintiff's boat.

The only excuse offered is that the wheel-houses of the
steamer were so high as to cut off the view of the pilot in the
wheel-house from the river either to the right or left of the
stern; that it was only between the wheel-houses directly
astern that the river could be seen in near proximity to the
boat, and in consequence of this obstruction of the view the
pilot did not notice the boat of the plaintiff until the stern of
the steamer had so far swung around as to bring it in view
between the wheel-houses over the deck of the ferry, when it
was too late to avoid the collision.   If the view of the waters
of the river was thus obstructed, common prudence would
suggest that a lookout should have been stationed upon the
stern of the ferry-boat so as to give warning of the presence
of any craft upon the river liable to be injured while the ferry
was backing out of her slip.   Her duty was to see that the
way was clear and not back out into the river where boats
were likely to be passing at any time without taking any pre-
caution to avoid meeting with them.   When the plaintiff saw
that his boat was in immediate danger of being run down he
used his best endeavors to row his boat into the shore and thus
avoid the injury, and in this it is claimed his negligence con-
sisted.   We do not so regard his action, but consider it but a
fair effort upon his part to avoid the effect of the negligence

of those in charge of the ferry-boat. We have not noticed especially the instructions concerning the measure of damages, as it was conceded upon the oral argument of the case that if the plaintiff was entitled to recover upon this record, no valid objection could be taken to the amount of damages assessed by the jury. The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*