Harrell v. Speed.

LESLIE L. HARRELL *v.* R. A. SPEED, Clerk.

## (*Jackson.* April Term, 1904.)

1. **INTOXICATING LIQUORS.** Their sale on boat engaged in interstate commerce while in jurisdiction of this state subjects seller to privilege tax.

A barkeeper running a bar under a lease and selling intoxicating liquors on a ferryboat, while at its landing within the juris-diction of this State, is subject to the privilege tax imposed by statute upon persons selling liquors on steamboats, vessels, or other water crafts, although such ferryboat belongs to a cor-poration duly created and existing under the laws of another State where its *situs* is, and is used in plying between a port in that State and one in this State.

Acts cited and construed 1903, ch. 257, sec. 4, p. 615; act of con-gress of August 8th, 1890, 26 Stat., 313, ch. 728, known as the "Wilson Bill."

Cases cited and approved: License Cases, 5 How., 504; Barte-meyer v. Iowa, 18 Wall., 129; Boston Beer Co. v. Massachusetts, 97 U. S. 25; Foster v. Kansas, 112 U. S., 201; Mugler v. Kan-sas, 123 U. S., 623; Kidd y. Pearson, 128 U. S., 1; Eilenbecker v. Plymouth County, 134 U. S., 31; Bowman v. Railroad, 125 U. S., 465; Leisy v. Hardin, 135 U. S., 100; Wilkerson v. Rah-rer, 140 U. S., 561; Rhodes v. Iowa, 170 U. S., 412; Vance v. Vandercock Co., 170 U. S., 468.

Case cited and disapproved: State v. Frappart, 31 La. Ann., 340.

2. **SAME.** Same. Imposition of privilege tax for its sale is with-in the police powers of the State.

The imposition of privilege tax for selling intoxicating liquors on steamboats, which are engaged in interstate commerce, while at landings within the jurisdiction of this State, is dis-tinctly within the police powers of the State. (*Post, pp.* 229, 230.)

Harrell v. Speed.

Cases cited and approved: License Cases, 5 How., 504; Barte-meyer v. Iowa, 18 Wall., 129; Boston Beer Co. v. Massachu-setts, 97 U. S., 25; Foster v. Kansas, 112 U. S., 201; Mugler v. Kansas, 123 U. S., 623; Kidd v. Pearson, 128 U. S., 1; Eilen-becker v. Plymouth County, 134 U. S., 31.

3. **CORPORATION.** Taxation in the State of its existence or where the property rests.

Steamboats belonging to a corporation and used in transporting freight and passengers between States can be taxed in the State under the laws of which the corporation is created and exists, at the home port of the company, and at their *situs* when at rest. (*Post, pp.* 227, 228.)

Case cited and approved: Transportation Co. v. Wheeling, 99 U. S., 273.

4. **SAME.** Of other States are not taxable here on interstate commerce business, when.

This State can neither impose a tax upon the capital stock of a corporation of another State, nor upon its boats engaged in interstate commerce, and making only temporary landings in this State; nor a privilege tax for carrying on the business of such interstate commerce. (*Post, p.* 228.)

Cases cited and approved: Ferry Co. v. Pennsylvania, 114 U. S., 196; St. Louis v. Ferry Co., 11 Wall., 423; Henderson v. New York, 92 U. S., 259.

5. **INTOXICATING LIQUORS.** Their importation or sale is sub-ject to State legislation.

The importation or sale of liquors, whether in the original pack-age or after they are broken, is subject to the legislation of the State or Territory into which they are imported, or in which they are stored. (*Post, pp.* 228-235.)

Acts cited and construed: Act of congress of August 8, 1890, 26 Stat., 313, ch. 728, known as the "Wilson Bill."

113 Tenn—15

Cases cited: Bowman v. Railroad, 125 U. S., 465; Leisy v. Hardin, 135 U. S., 100; Wilkerson v. Rahrer, 140 U. S., 561; Rhodes v. Iowa, 170 U. S., 412; Vance v. Vandercock Co., 170 U. S., 468.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County.—J. P. YOUNG, Judge.

RANDOLPH & RANDOLPH, for plaintiff.

ATTORNEY-GENERAL CATES and C. D. M. GREER, for defendant.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This case is before us on an agreed statement of facts, from which is appears that the West Memphis Ferry Company is a corporation duly created under the laws of the State of Arkansas, having its *situs* at West Memphis, in the county of Crittenden, in that State, on the western bank of the Mississippi river; that the corporation, by its charter, has a right to own and use water craft on that river, and for three years, under the license duly and legally issued to it by the county of Crittenden, it has been operating ferryboats across the

Mississippi river, carrying passengers and freight from West Memphis, and landing at its dock at the wharf at the city of Memphis, in this State, where it would discharge the same, and take on other passengers and freight for transport to its home port and one or two other ports in the State of Arkansas; that a bar was maintained on each of its boats, where liquors were sold; and that the privilege of keeping the bar on one of these boats was rented to Harrell, the plaintiff in error, who had been, and was, engaged in selling intoxicants by retail to passengers on its boats, and such other persons as happened to come on board, and desired to make purchases thereof.

For the exercise of this privilege, the State of Tennessee, through a proper officer, required Harrell, under the menace of a distress warrant, to pay the license tax which it was insisted was due under that portion of section 4 of chapter 257, p. 615, of the Acts of 1903 which reads as follows: "Persons selling beer or any quantity of liquor on steamboats, flatboats or any other vessel or water craft or from railroad cars shall pay a tax, each in lieu of all other taxes, to be paid in any county they may elect, per annum two hundred dollars." This payment was made under protest, and the present suit was brought to recover the money so paid, upon the ground that it was illegally exacted.

That the steamboats used by the West Memphis Ferry Company in carrying on its business of transporting freight and passengers could be taxed in the State of

Arkansas, at the home port of the company, and their *situs* when at rest, is settled in *Cin. Trans. Co. v. Wheeling,* 99 U. S., 273, 25 L. Ed., 412. It is also settled that the State of Tennessee could neither impose a tax on the capital stock of this ferry company, incorporated as it was by the State of Arkansas (*Gloucester Ferry Co. v. Com. of Pa.,* 114 U. S., 196, 5 Sup. Ct., 826, 29 L. Ed., 158), nor upon the boats, engaged, as they were in interstate commerce, and making, as they did, only temporary landings at the wharf in the city of Memphis (*St. Louis v. Wiggins Ferry Co.,* 11 Wall., 423, 20 L. Ed., 192).

The question then presented is, does the principle which thus restrains the taxing power of this State, both as to the capital stock of this company, and of its boats employed in ferry purposes, also prevent the exaction of a privilege tax from one running a bar on one of these boats while at its landing within the jurisdiction of this State?

We think it beyond doubt that the legislature of Tennessee could not impose a privilege tax upon this company for disembarking its passengers and discharging its cargoes of freight at the wharf in the city of Memphis, or for gathering passengers and freight to be transported across the river to the State of Arkansas. *Gloucester Ferry Co. v. Com. of Pa.,* supra. The exemption from this tax rests upon the fact that receiving and landing passengers and freight were incident to their transportation, without which there could be no such

thing as transportation of either across the Mississippi river. Such a tax would be a burden on interstate commerce, and clearly unenforceable. *Henderson* v. *Mayor N. Y.,* 92 U. S., 259, 23 L. Ed., 543.

But can the same thing be said as to the privilege license required for maintaining a bar for the sale of spirituous liquors on one of its boats? So far as the agreed statement of facts shows, the charter conferred no right on the company to maintain a bar, or rent the privilege of doing so to another; nor can we see that the exercise of such a privilege forms an essential part of the business which it is authorized to do.

But again, it is not disclosed that the liquors and beer dispensed to customers over the bar on the boat in question were brought into this State from Arkansas, or from any other foreign State, so as, in any form, to give the plaintiff in error the benefit of the interstate clause of the federal constitution or any of the laws of congress regulating commercial intercourse between the States. For all that appears in the record, the intoxicants kept and sold at this bar may have been purchased in Tennessee by Harrell for retail at the port of Memphis, within this State. If this be the fact, we can see no reason why the plaintiff in error, so retailing, should stand on any higher ground than the seller of drinks over the bar of any one of the saloons of that city.

But we do not deem it necessary to place this case on narrow or technical ground, as we think the judgment of the trial court can be rested on the broader ground

that the imposition of the tax or license fee was distinctly within the police power of the State.

With regard to the retailing of intoxicants, there has never been a question as to the right of the several States to control the subject. The long line of cases found in the reports of the supreme court of the United States agree in affirming the general proposition that the regulation of the manufacture and the sale of intoxicating liquors is peculiarly under the control of the States, and within their police power, which has not been surrendered to the federal government. *License Cases,* 5 How., 504, 12 L. Ed., 256; *Bartemeyer* v. *Iowa,* 18 Wall., 129, 21 L. Ed., 929; *Boston Beer Co.* v. *Mass.,* 97 U. S., 25, 24 L. Ed., 989; *Foster v. Kan.,* 112 U. S. 201, 5 Sup. Ct., 897, 28 L. Ed., 629; *Mugler* v. *Kan.,* 123 U. S., 623, 8 Sup. Ct., 273, 31 L. Ed., 205; *Kidd* v. *Pearson,* 128 U. S., 1, 9 Sup. Ct., 6, 32 L. Ed., 346; *Eilenbecker* v. *Ply. Co.* 134 U. S., 31, 10 Sup. Ct., 424, 33 L. Ed., 801.

In the earliest and most celebrated of these cases, reported under the title of the "License Cases," supra, there was involved a question of the constitutionality of certain laws passed by the legislatures of Massachuetts, New Hampshire, and Rhode Island, restricting the sale of liquors in these different States. In the New Hampshire case the courts of the State applied the statute then in force to the sale by the importer of a barrel of gin, which was unbroken and in the same condition that it was when brought into the State. The justices of the

supreme court of the United States agreed in maintaining the constitutionality of this statute, though they rested their conclusion on different grounds. Chief Justice Taney, in an opinion universally recognized as of great ability, while conceding the power of congress to deal exclusively with the subject of the importation of intoxicants, and, when so dealing with it, that its action would supplant all repugnant statutes passed by the States, yet held that the acts in question were valid, because congress had not legislated with regard thereto. This view was the prevailing one with that court for many years, as the reasoning of the chief justice was often referred to, and the decision was as often cited with approval.

But in *Bowman* v. *Chicago & Northwestern Railway Co.,* 125 U. S., 465, 8 Sup. Ct., 689, 1062, 31 L. Ed., 700, the authority of these cases was greatly weakened. The Bowman case involved the validity of a statute of the State of Iowa which imposed a penalty upon any railroad company or other common carrier that should knowingly bring into the State any intoxicating liquors without first having obtained a certificate from the proper authority certifying that the consumer was authorized by the laws of Iowa to sell such liquors. While the court recognized that this statute had been passed for the purpose of carrying out the general legislative design to protect the health and morals of the people of that State, yet it was held to be unconstitutional, upon the ground that it was an effort to regulate commerce

between the States. While the court did not in express terms overrule the License Cases, and the later cases resting for authority on them, yet there was a clear suggestion throughout the argument of a doubt as to the soundness of the conclusion announced therein. But what the court seemed to hesitate to do in the Bowman case was expressly done by a majority opinion in *Leisy* v. *Hardin,* 135 U. S., 100, 10 Sup. Ct., 681, 34 L. Ed., 128. There it was held that the importation of liquors from foreign countries, and from one State to another, was a subject which required a general and uniform rule for its regulation, free from State interference, and therefore the States were without authority to control the subject, even though congress had not enacted any legislation with regard thereto.

The opinions in these two later cases attracted great attention, and produced a feeling of discontent among those who believed the liquor traffic, in all of its power, should be under the supervision of the various States. This conviction was so widespread, and such pressure was brought to bear upon congress, that in 1890 it passed an act, popularly known as the "Wilson Bill" (Act Aug. 8, 1890, 26 Stat., 313, c. 728 [U. S. Comp. St., 1901, p. 3177]), which provides that "all fermented, distilled or other intoxicating liquors or liquids tranported into any State or Territory or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such State or Territory be subject to the operation or effect of the laws of such State or Territory  .  .  .  and

shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

The constitutionality of this law was attacked in *Wilkerson* v. *Rahrer,* 140 U. S., 561, 11 Sup. Ct., 865, 35 L. Ed., 572, but it was there sustained as a proper exercise of legislative power. .

But it is to be observed that the authority of *Bowman* v. *Chicago Ry. Co.,* supra, and of *Leisy* v. *Hardin,* supra, never extended further than to protect the importer of original packages or fermented or distilled liquors or beer as long as they were unbroken, and, by necessary implication, excluded from the exemption from State control those persons engaged in the mere retail liquor business. As to them and their business, no doubt ever did exist of the State's power of regulation by the imposition of privilege taxes or otherwise, and the only effect of the Wilson bill was to hand over the importer, even with his original package, after the terminus of its transit had been reached, to the control of the State.

So it is that the importer of intoxicants, whose packages had reached such terminus, and the retailer now stand on the same ground, and are equally under the strong and restraining hands of the several States.

But it is said, however, in the argument of the counsel for plaintiff in error, that this act was not intended to interfere with the interstate commerce of intoxicants, but its operation was confined to liquors or liquids introduced into a State or Territory after they had become mingled with the mass of the taxable property of such

State or Territory; and for this proposition *Wilkerson* v. *Rahrer*, supra, *Rhodes* v. *Iowa*, 170 U. S., 412, 18 Sup. Ct., 664, 42 L. Ed., 1088, and *Vance* v. *Vandercock Co.*, 170 U. S., 468, 18 Sup. Ct., 645, 42 L. Ed., 1111, are cited by counsel.

To this contention it may be replied that, were this its only effect, then it was idle legislation. For it was never a matter of doubt—the absolute right of the State to control, by taxation or otherwise, either intoxicants or any other character of property, when once incorporated with the general mass of property within the State. As has been seen, as to intoxicants, the struggle upon the part of some of the States was to assume control while they were in unbroken packages in the hands of the importer. It was against this claim the cases of *Bowman* v. *Chicago & Northwestern Ry. Co.*, supra, and *Leisy* v. *Hardin*, supra, were leveled. It was there, however, conceded, and, so far as we know, it has been uniformly so, that, when once the original package is broken it has passed beyond the limit of federal control, and into that of the State.

Nor do the cases upon which the counsel of plaintiff in error rests for this contention support it. In *Wilkerson* v. *Rahrer*, supra, the court, having discussed the restrictive effect upon the legislation of the several States of the Bowman and Leisy cases, then adds (referring to the Wilson bill): "Congress has now spoken, and declared that imported liquors or liq-

Harrell v. Speed.

uids shall, upon arrival into a State, fall within the category of domestic articles of a similar nature. Is the law open to constitutional objection?" In *Rhodes* v. *State of Iowa,* supra, it is said, "It has been settled that the effect of the act of congress is to allow the statutes of the several States to operate upon packages of imported liquor before sale;" but it was at the same time held that State legislation of a restrictive character could not attach to such packages "the moment they reached the State line, and before the completion of the act of transportation." The first of the syllabi in *Vance* v. *Vandercock Co.,* supra, clearly shows that it is in accord with the Wilkerson and Rhodes cases. It is as follows: "Under the act of August 8, 1890 [Wilson Bill; 26 Stat., 313, c. 728 (U. S. Comp. St. 1901, p. 3177)], the restriction and regulations of State laws become operative on the original packages of intoxicating liquors imported into a State before the sale thereof, and therefore such packages cannot be sold if the State law forbids the sale, or can be sold in the manner and form prescribed by the State regulations."

We have been referred to the case of *State* v. *Frappart,* 31 La. Ann., 340, where it was held that the imposition of a license tax for selling beer and liquors from a bar on a steamboat plying between ports in the States of Louisiana and Mississippi, at one of the intermediate ports, was an unauthorized interference with commerce between the States. This case, it may be conceded, sus-

Harrell v. Speed.

tains the contention of plaintiff in error; but we are not able to agree with it, as, in our view, the retailing of liquor does not, in any event, constitute interstate commerce.

It follows that the judgment of the lower court is affirmed.