STATE OF IOWA, Appellant, v. ENOS MOYERS.

**Criminal law:** BOUNDARY RIVERS: JURISDICTION. The statutes conferring upon this state concurrent jurisdiction of the waters of the Mississippi river where the same form a common boundary with other states, contemplate that all jurisdiction which might otherwise have been exercised by the courts of this state within its boundary shall be possessed by it with reference to transactions on any part of the river lying between it and another state, without regard to the navigable channel of the river: So that this state may prohibit fishing with a net on any part of the river forming a common boundary, without first procuring an Iowa license, though on the opposite side of the channel, and although the offender may have a license from the adjoining state.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTH, Judge.

TUESDAY, JUNE 25, 1912.

IN a prosecution before a justice of the peace defendant was accused of using nets unlawfully in the waters of Iowa, to wit, in the Mississippi river, for that defendant in Des Moines county did willfully, unlawfully, and feloniously take from the waters of the Mississippi river within the jurisdiction of the state of Iowa, certain fish, etc., with a hoop net, without first having procured from the state fish and game warden of Iowa an annual license for the use of said net. On a trial before the justice of the peace, the defendant was found guilty and adjudged to pay a fine, from which judgment he appealed to the district court of Des Moines county. On a trial in that court it appeared conclusively that defendant had taken fish with a net from that portion of the Mississippi river lying east of Des Moines county without having first procured a license under the laws of this state, but there was a conflict in the evidence as to whether the act was done west or east of the center of the main navigable channel of said river. No evidence was offered showing, or tending to show, the laws or regulations of the state of Illinois as to fishing in the Mississippi river. At the conclusion of the evidence the court instructed the jury that defendant could be convicted only on finding that he had taken fish with a net without a license from that portion of the waters of the Mississippi river on the westerly or Iowa side of the middle of the main navigable channel of said river and within the limits of Des Moines county. There was a verdict for defendant, and he was discharged from custody. From this judgment, the state appeals.—*Reversed.*

*George Cosson,* Attorney General, and *C. A. Robbins,* and *John Fletcher,* Assistant Attorneys-General, for the State.

*La Monte Cowles,* and *James K. Allen,* for appellee.

McClain, C. J.—In the provisions of the Code regulating the taking of fish in the waters of the state there is a general exception excluding the waters of the Mississippi river (and certain other boundary rivers) from such regulations. Code, section 2547. But in 1909 a statute was enacted providing that in the boundary rivers thus enumerated there should be no fishing with nets or seines without first procuring from the fish and game warden of this state an annual license for the use of such nets and seines, the license fee being fixed by the statute, and the taking by any person of fish of a certain description from said rivers except by hook and line during a specified portion of the year was also prohibited. See chapter 155, Acts of 33d General Assembly, as amended by chapter 117, Acts 34th General Assembly. Prior to the enactment of these statutes, the laws of the state regulating fishing were not applicable to the navigable boundary rivers of the state which were subject to the concurrent jurisdiction of adjoining states. *Little v. Green,* 144 Iowa, 492. In the statutes last cited this state has attempted for the first time to regulate fishing in these boundary rivers, and the question now presented is whether the state may legislate in regard to fishing in such rivers in the exercise of the concurrent jurisdiction vested in it; that is to say, the question is whether, in the exercise of such concurrent jurisdiction, the state may regulate the taking of fish in the Mississippi river and punish a violation of its statutes, although such violation is committed beyond the middle of the main navigable channel of such river, the middle of the navigable channel being the boundary line between this state and the state of Illinois. See preamble to the Constitution, wherein the boundaries of the state are described in accordance with the act of Congress admitting the state into the Union.

The concurrent jurisdiction of this state over the

waters of the Mississippi river without regard to the
boundary line between this state and any adjoining state
which is asserted in Code, section 3, is dependent upon the
act of Congress admitting the state into the Union, which
contains the following provision: "The said state of Iowa
shall have concurrent jurisdiction on the river Mississippi
and every other river bordering on the said state of Iowa,
so far as the said rivers shall form a common boundary
to said state, and any other state or states now or hereafter
to be formed or bounded by the same; such rivers to be
common to both." Act March 3, 1845, chapter 48, 5 Stat.
742, amended as to boundaries by Act Aug. 4, 1846,
chapter 82, 9 Stat. 52. A similar provision was found in
the statute for the admission of the state of Illinois (Act
April 18, 1818, chapter 67, 3 Stat. 429), and the con-
current jurisdiction of Iowa and Illinois over the Missis-
sippi river so far as it constitutes the boundary between
the two states is dependent upon these provisions. In apply-
ing them it has been held by this court that the jurisdic-
tion of this state does not extend to abatement of a nuisance
on the Illinois side of the river consisting of a permanent
structure on that side (*Gilbert v. Moline Water Power &
Mfg. Co.,* 19 Iowa, 319; *Buck v. Ellenbolt,* 84 Iowa, 394),
but does extend to a criminal nuisance committed on a
boat in the river, although such boat was at the time moored
to the Illinois shore; *State v. Mullen,* 35 Iowa, 199. The
case last cited is relied upon by the state as sustaining its
jurisdiction to regulate the taking of fish in the waters of
the river in any portion thereof between the Iowa bank
and the Illinois bank of the stream. And it must be con-
ceded that this contention is strongly supported by the
case last cited; for, if the Legislature of Iowa may by
statute determine what is a nuisance and provide for the
punishment of a violation of such statute committed any-
where on the waters of the river between the two states,
then it may prescribe what shall constitute the unlawful

taking of fish in any portion of the river and punish the violation of such statute, although committed outside of the boundaries of the state, that is, east of the middle line of the main channel. On the other hand, it must be admitted that a serious question is here involved, for, if the contention of the state is to be sustained, then those persons who on the Illinois side of the river engage in the business of fishing in full compliance with the laws of Illinois may nevertheless be subject to punishment if they have not also complied with the laws of Iowa. Taking this case for an illustration, and assuming that there is a statute in Illinois similar to that of this state requiring the payment of an annual license for exercising the privilege of taking fish with nets, one who has fully complied with the Illinois statute by paying the annual license which may be required by the laws of that state would still be punishable under the laws of Iowa if he had not complied with our statute by paying the annual license required by the laws of this state.

This exact question has been fully considered by the Supreme Court of Wisconsin in the case of *Roberts v. Fullerton*, 117 Wis. 222 (93 N. W. 1111, 65 L. R. A. 953). In that case the conclusion of the majority of the court was that, under provisions as to concurrent jurisdiction similar to those involved in our own case of *State v. Mullen*, the states of Minnesota and Wisconsin could regulate fishing in that portion of the Mississippi river forming the boundary between the two states only so far as the waters of the river were within the actual territorial limits of the state; that is to say, the right to regulate fishing on the west side of the center of the channel was exclusively in the state of Minnesota, while the right of regulation on the east side of that imaginary and uncertain line was exclusively in the state of Wisconsin. In the majority opinion an attempt is made to define concurrent jurisdiction as relating "to matters at least in some way connected

with the use of the water for navigable purposes, to things afloat, or in some legitimate sense on the water—things difficult to deal with if it were necessary to determine in each instance of the exercise of jurisdiction the precise location of the particular act involved as regards the boundary line," with the result that "it does not include the right to regulate the enjoyment, by the people of one state within its domain, of the right to navigate or fish. It does not empower one state to spread its mere police regulations over territory of another, regulating the sovereign property right of the latter in or to the water flowing over such territory, or to the fish therein or fowls thereon, which it holds in trust for the enjoyment of the whole people within its boundaries, in their individual capacities, under such legal restraints as such other, in its legislative wisdom, may see fit to impose, so long as such enjoyment does not interfere unlawfully with like enjoyment by the people of the state on the opposite side of the boundary." But in the dissenting opinion attention is called to the impossibility of distinguishing between criminal and police legislation of the state addressed to the subject of catching or destroying fish and police or criminal legislation relating to other subjects; and the view is expressed that the concurrent jurisdiction necessarily includes the promulgation of legislation extending over the boundary waters and the enforcement thereof in the manner prescribed by such legislation, whether by courts or by executive officers.

An examination of the various cases relating to the subject of concurrent jurisdiction over boundary rivers develops the fact that great difficulty has been experienced in determining its nature and scope. We think that the meaning of the term as used in the acts of Congress conferring such concurrent jurisdiction upon the various states may be ascertained with some reasonable accuracy by taking into account the difficulties evidently intended to be avoided.

As suggested by this court in *State v. Mullen, supra,* a manifest purpose was to avoid the question so difficult of determination as to whether a criminal act was committed on one side or the other of the imaginary boundary line which might often be a matter of uncertainty. To the same effect, see *State v. George,* 60 Minn. 503 (63 N. W. 100). This evident purpose of Congress is not accomplished if in any kind of a judicial proceeding the jurisdiction of the court over the subject-matter is dependent upon the relation of the transaction as to the place of its occurrence to the exact boundary line of the state. Nor will such purpose be accomplished if it is held that the laws of the state are of no force or effect beyond this boundary line; for the courts of the state would in that event be called upon to determine in each case involving the application of its laws to a transaction on the river whether the transaction were on the one side or the other of this boundary line.

The whole question seems to turn ultimately on the meaning to be given to the phrase "concurrent jurisdiction." If the purpose of Congress was to give to each of the states bordering on the river no other power than to enforce its laws with reference to transactions on that part of the river included within its boundary line, then no purpose whatever was served beyond that which would have been accomplished by fixing the boundary line itself, for complete jurisdiction up to that boundary line would thereby have been vested in the adjoining states. Certainly something more was intended, and the thing evidently intended was that all the jurisdiction which might otherwise have been exercised by the state with reference to transactions on the river within the boundary line should be possessed and exercised by the state with reference to like transactions on any part of the river without regard to the boundary. This conclusion is in accordance with the great preponderance of authority in relation to similar questions. *Keator*

*Lumber Co. v. St. Croix Boom Corp.*, 72 Wis. 62 (38 N.
W. 529, 7 Am. St. Rep. 837); *Opsahl v. Judd*, 30 Minn.
126 (14 N. W. 575); *Carlisle v. State*, 32 Ind. 55;
*Sherlock v. Alling*, 44 Ind. 184; *Memphis & C. Packet
Co. v. Pikey*, 142 Ind. 304 (40 N. E. 527); *Dugan v.
State*, 125 Ind. 130 (25 N. E. 171, 9 L. R. A. 321); *Welsh
v. State*, 126 Ind. 71 (25 N. E. 883, 9 L. R. A. 664);
*State v. Metcalf*, 65 Mo. App. 681; *Wiggins Ferry Co. v.
Reddig*, 24 Ill. App. 260; *Harrell v. Speed*, 113 Tenn.
224 (81 S. W. 840, 1 L. R. A. (N. S.) 639, 106 Am.
St. Rep. 814, 3 Ann. Cas. 260); *State v. Faudre*, 54 W.
Va. 122 (46 S. E. 269, 63 L. R. A. 877, 102 Am. St. Rep.
927, 1 Ann. Cas. 104); *McFall v. Commonwealth*, 2 Metc.
(Ky.) 394. The use of the term is not to be construed
as requiring joint action of the two states. *Keator Lumber
Co. v. St. Croix Boom Corp., supra.* Manifestly this is so,
for joint action in the exercise of jurisdiction over the
river would be impracticable. Neither the Legislatures nor
the courts of the two states could make a joint arrangement
by which the laws of the one should not be operative on
the river, unless they coincided in every way with the laws
of the other. No state of the Union can without the con-
sent of Congress enter into any agreement or compact with
another state. Const. U. S. article 1, section 10, par. 3.
In effect, the states are by this provision of the Constitution
incapable of entering ·into treaties with each other.

·Congress might, no doubt, legislate with reference to
acts or transactions on the navigable rivers. It has done
so to the extent of defining and providing for the punish-
ment of crimes committed upon navigable waters within
the admiralty jurisdiction of the United States and out
of . the jurisdiction of any particular state; see *United
States v. Rodgers*, 150 U. S. 249 (14 Sup. Ct. 109, 37
L. Ed. 1071), but it has evidently deemed it advisable
that the general criminal jurisdiction over navigable rivers
so far as they are within state limits be exercised by the

states themselves, and it has adopted the plan of giving to the adjoining states having navigable rivers as their common boundary concurrent jurisdiction over them. So far as cognizance of crimes is concerned, it seems to be conceded on all hands that the officers of the state, bounded by such a river, may make arrests for such criminal acts on any portion of the river so far as it constitutes the common boundary, that the courts into which such offenders are brought may try them for the offenses committed as though committed within the limits of the state regardless of whether the place of commission was on one side or the other of the boundary line, and that they be punished in accordance with the laws of the State in which they are thus put on trial.

Several of the cases already cited illustrate this application of the concurrent jurisdiction which Congress has provided for in such cases. But we are unable to see any distiction which can be drawn between the power to provide a punishment for acts of an essentially criminal nature committed upon the waters of a boundary river and the power to provide for and enforce a criminal punishment for acts not inherently or essentially criminal, but which are in violation of the police regulations of the state. In *Welsh v. State*, and *Harrell v. Speed, supra*, it was held that the liquor laws of one state might be enforced as to sales of liquors upon a boundary river over which it had jurisdiction, and in *Dugan v. State, supra*, the Sunday laws of the state were held applicable to persons pursuing a business on the river over which the state was given jurisdiction, although beyond its boundary line. In our own case of *State v. Mullen, supra*, approved and followed in *State v. Metcalf, supra*, it was held that criminal nuisances committed anywhere upon the river over which the state has common jurisdiction may be punished in accordance with the laws of such state, regardless of the locality of the nuisance with reference to the boundary line. We see

no distinction which can be drawn between statutes regulating the sale of intoxicating liquors and the maintenance of nuisances and those relating to fishing.

In short, we reach the conclusion that the views expressed by the majority of the Supreme Court of Wisconsin in the case of *Roberts v. Fullerton* are inconsistent with those expressed by this court in *State v. Mullen, supra,* and against the substantial weight of authority. The trial court erred, therefore, in making the conviction of the defendant in this case dependent upon a finding of the jury that the act which he was charged with having committed in violation of the laws of the state with regard to fishing was committed on that portion of the Mississippi river west of the boundary line of the state.

On this appeal by the state we have no authority to do more than announce the law which should have been followed by the lower court in the trial of the case, but to this extent we reach the conclusion that for the error committed the judgment should be—*Reversed.*