State of Iowa, Appellant, v. George Rorris, Appellee.

No. 43656.

February 16, 1937.

Edward L. O'Connor, Attorney General, LeRoy A. Rader, Asst. Attorney General, M. E. Rawlings, County Attorney, and John L. Mulhall, Asst. County Attorney, for appellant.

George Paradise, for appellee.

Mitchell, J.—An information was filed against George Rorris by one of the officers of the Conservation Commission of the State of Iowa, accusing him of the crime of the illegal use of live decoys, in the form of live ducks, in luring or attracting migratory waterfowl, in violation of section 15 of the Iowa Conservation Commission's 1935-1936 Iowa Hunting Regulations.

The accused entered a plea of not guilty. The case proceeded to trial. Evidence was offered, and at the close of the State's evidence the defendant moved for a directed verdict. The court sustained the first paragraph of the motion, which was as follows:

"(1) The crime charged was not committed in Woodbury County as alleged in the information, as it now affirmatively appears in the evidence that the live decoys, if any, were on the sand bar or island located west of the main channel of the Missouri River, a fixed part of the State of Nebraska, and over which sand bar or island this court had and has no jurisdiction."

The jury being instructed by the court, returned a verdict in favor of defendant and against the State of Iowa. The State has appealed.

It appears that in November of 1935 George Rorris was hunting on a sand bar in the Missouri River, opposite Lakeport township in Woodbury County. He was alone in a blind built on a point on the bar.

To those interested in the outdoor sport of hunting the meaning of the word "blind" is well known, but to many of the legal profession, who spend most of their time hunting in the books, this term may not be known, and for their benefit the following is inserted: A blind is made from willows or grass or some vegetation, and is used for the purpose of concealing the hunter. It isn't covered at the top, but is built up in front, back of which the hunter sits, concealed from the ducks, waiting until the birds appear.

There were two live ducks, with a string tied around their legs that led to a stick driven into the sand bar, used to attract wild ducks close to the blind where the eagle eye of the hunter was awaiting them.

The question in the case at bar is whether the Iowa court had jurisdiction over the place where the offense against the fish and game laws of this State (Code 1935, sec. 1703-g1 et seq.) was alleged to have been committed.

Section 3 of the 1935 Code of Iowa is as follows:

"The state has concurrent jurisdiction on the waters of any river or lake which forms a common boundary between this and any other state."

This question has been before this court before. The late Chief Justice McClain, speaking for the court in the case of State of Iowa v. Moyers, 155 Iowa 678, said at pages 684-5, 136 N. W. 896, 898, 41 L. R. A. (N. S.) 366:

"The whole question seems to turn ultimately on the mean-

1350

ing to be given to the phrase 'concurrent jurisdiction.' If the purpose of Congress was to give to each of the states bordering on the river no other power than to enforce its laws with reference to transactions on that part of the river included within its boundary line, then no purpose whatever was served beyond that which would have been accomplished by fixing the boundary line itself, for complete jurisdiction up to that boundary line would thereby have been vested in the adjoining states. Certainly something more was intended, and the thing evidently intended was that all the jurisdiction which might otherwise have been exercised by the state with reference to transactions on the river within the boundary line should be possessed and exercised by the state with reference to like transactions on any part of the river without regard to the boundary. This conclusion is in accordance with the great preponderance of authority in relation to similar questions. Keator Lumber Co. v. St. Croix Boom Corp., 72 Wis. 62 (38 N. W. 529, 7 Am. St. Rep. 837) ; Opsahl v. Judd, 30 Minn. 126 (14 N. W. 575) ; Carlisle v. State, 32 Ind. 55; Sherlock v. Alling, 44 Ind. 184; Memphis & C. Packet Co. v. Pikey, 142 Ind. 304 (40 N. E. 527) ; Dugan v. State, 125 Ind. 130 (25 N. E. 171, 9 L. R. A. 321) ; Welsh v. State, 126 Ind. 71 (25 N. E. 883, 9 L. R. A. 664) ; State v. Metcalf, 65 Mo. App. 681; Wiggins Ferry Co. v. Reddig, 24 Ill. App. 260; Harrell v. Speed, 113 Tenn. 224 (81 S. W. 840; 1 L. R. A. (N. S.) 639, 106 Am. St. Rep. 814, 3 Ann. Cas. 260) ; State v. Faudre, 54 W. Va. 122 (46 S. E. 269, 63 L. R. A. 877, 102 Am. St. Rep. 927, 1 Ann. Cas. 104) ; McFall v. Commonwealth, 2 Metc. (Ky.) 394. The use of the term is not to be construed as requiring joint action of the two states. Keator Lumber Co. v. St. Croix Boom Corp., supra. Manifestly this is so, for joint action in the exercise of jurisdiction over the river would be impracticable. Neither the legislatures nor the courts of the two states could make a joint arrangement by which the laws of the one should not be operative on the river, unless they coincided in every way with the laws of the other. No state of the Union can without the consent of Congress enter into any agreement or compact with another state. Const. U. S., Article 1, section 10, par. 3. In effect, the states are by this provision of the Constitution incapable of entering into treaties with each other.''

And at pages 686-7 :

"Several of the cases already cited illustrate this application of the concurrent jurisdiction which Congress has provided for in such cases. But we are unable to see any distinction which can be drawn between the power to provide a punishment for acts of an essentially criminal nature committed upon the waters of a boundary river and the power to provide for and enforce a criminal punishment for acts not inherently or essentially criminal, but which are in violation of the police regulations of the state. In Welsh v. State, and Harrell v. Speed, supra, it was held that the liquor laws of one state might be enforced as to sales of liquors upon a boundary river over which it had jurisdiction, and in Dugan v. State, supra, the Sunday laws of the state were held applicable to persons pursuing a business on the river over which the state was given jurisdiction, although beyond its boundary line. In our own case of State v. Mullen, supra, approved and followed in State v. Metcalf, supra, it was held that criminal nuisances committed anywhere upon the river over which the state has common jurisdiction may be punished in accordance with the laws of such state, regardless of the locality of the nuisance with reference to the boundary line. We see no distinction which can be drawn between statutes regulating the sale of intoxicating liquors and the maintenance of nuisances and those relating to fishing."

And so Iowa has laid down the rule, accepted by the great weight of authority, that the jurisdiction of this State extends not alone to the boundary line of the State but that it "has concurrent jurisdiction on the water of any river or lake which forms a common boundary between this and any other state."

We must turn to the record to ascertain where this offense was committed. The only evidence offered was that of the witnesses for the State. It shows, without dispute, that the offense was committed on a sand bar, west of the main channel of the river. The appellee used a rowboat to cross the channel to the place where he was hunting. We quote from the evidence set out in appellee's brief:

"We all walked back and forth there from time to time. There were some narrow channels west of the sand bar. In reality that bar is really an island. I have been on that island approximately twenty times, and the bar or island is on the west side of the channel. The bar really isn't permanent. Any of

1352

these bars may be here today and tomorrow they are gone, depending on how the channel changes. At that time it was a fixed part and there was no water on top of it. It is sand. It has a foundation resting on the river bottom. The river moves them around a lot. The bar is movable. The bar wasn't shaking when we were on it. It was solid. It was completely surrounded by water."

There is also the testimony that in high water the bar is completely covered by water. It wasn't a permanent structure on the Nebraska side of the Missouri River; it was a sand bar, "here today and gone tomorrow," temporary in its character and subject to the whims of the mighty Missouri as to its location or the length of time that it would last.

This was the spot where the defendant was charged with committing the offense. The Iowa court had jurisdiction, and the lower court erred in directing the verdict.

The appellee has been brought to trial and acquitted by a jury under the direction of the court. This opinion therefore does not affect him. We have no authority to do more than announce the law which should have been followed by the lower court in the trial of the case. But to this extent we reach the conclusion that the lower court erred in directing a verdict, and the judgment is reversed.—Reversed.

The Chief Justice and all Justices concur.