The Memphis and Cincinnati Packet Co. v. Pikey, Admx.

Filed October 17, 1895.

No. 16,970.

THE MEMPHIS & CINCINNATI PACKET CO. *v.* PIKEY, ADMINISTRATRIX.

APPELLATE PROCEDURE.—*No Reference to Page or Line in Transcript.—Deposition.*—In the absence of a reference to any page or line of the transcript where the rulings may be found, a claim of error in respect to suppressing or refusing to suppress questions and answers in depositions is unavailable.

ASSIGNMENT OF ERRORS.—*Collective Assignment.—Appellate Procedure.*—Error assigned to a series of instructions given or refused is unavailable if any one of the series is not subject to the objection.

COMMON CARRIER.—*Liability for Injuries Inflicted on Passenger by Servant of Carrier.—Defense.*—A carrier cannot escape liability for injuries to a passenger on a steamboat, caused by the quarrelsome, violent, and fighting crew, by showing that men of that class are usually employed for such work. (See note at end of opinion.)

CONFLICT OF LAWS.—*Tort Committed on Ohio River.—Jurisdiction. —Summons.*—The law governing a right of action for death from a wrong committed on the Ohio river, between Indiana and Kentucky, including the matter of service of summons and return, when the action is brought in Indiana, is the law of that State as much as if the Ohio river was wholly within the State.

SAME.—*Foreign Administrator, Action by in This State.*—The lack of any statute giving a right of action in similar cases in the State where an intestate resided does not preclude a right of action by a foreign administrator for wrongful death in this State, under section 284, R. S. 1881.

JURISDICTION.—*Ohio River.*—Courts of Indiana have concurrent jurisdiction of causes of action arising on the Ohio river, between this State and Kentucky, by virtue of the compact with Virginia, under which Kentucky became a State.

The Memphis and Cincinnati Packet Co. *v.* Pikey, Admx.

DEPOSITION. — *Cross-Examination Admissible in Evidence.* — One who has attended the taking of the deposition, and cross-examined the witness, has no power to exclude the reading of the cross-examination as a part of the deposition.

SUMMONS.—*Wharfmasters.—Common Carrier.*—Wharfmasters, who receive and discharge freight for a steamboat company, and are authorized to transact business in the name of the corporation, may be served with summons against the company, if the chief officer of the company is not found in the county, under section 316, R. S. 1881.

SAME.—*Return Of.--Affidavit.—Agent.—Common Carrier.*-- Affidavits that persons on whom summons was served, were not agents of a steamboat company, are insufficient to overcome a return of service stating that they received and discharged freight for the company.

From the Dearborn Circuit Court.

*C. F. Hayes, Johnson & Levy* and *W. H. Jones,* for appellant.

*McMullen, Johnston & McMullen,* for appellee.

MONKS, J.—This action was brought in Dearborn Circuit Court by the appellee, a foreign administratrix, against appellant, a foreign corporation, to recover damages for the death of Charles Pikey, under section 284, R. S. 1881, section 285, R. S. 1894, which is as follows : "When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

The case was tried upon the first, third and fifth paragraphs of complaint ; the other paragraphs were either

VOL. 142—20

abandoned at the trial, or demurrers to the same were sustained.

The three paragraphs mentioned each charge in different ways, that the appellant is a foreign corporation and was the owner of a line of steamboats, navigating the Ohio and Mississippi rivers from the city and port of Cincinnati, Ohio, to the city and port of Memphis, Tennessee; which boats were managed and run by appellant for the shipping, transportation and carrying of passengers and freight as common carriers for compensation and hire to and from said cities and to and from all intermediate cities, towns, wharves, and landings upon said rivers; that on the 23d of February, 1892, and long before that time and up to the commencement of this action, the wharfboat at Aurora and the wharfboat at Lawrenceburg, in Dearborn county, Indiana, were wharfboats upon which appellant discharged and received freight and passengers, carried for hire to and from said ports, and the said wharfmasters received and delivered freight for said appellant during all of said time; and that the appellant, by her clerks and captains of the several boats aforesaid, received and delivered freight and passengers at Aurora and Lawrenceburg in Dearborn county, Indiana; that one of the boats so operated by appellant was the "John K. Speed," and that while said steamboat was making a return trip from said city of Memphis to said city of Cincinnati, being then and there owned and operated by appellant, Charles Pikey, appellee's intestate, on February 23, 1892, took passage on said steamboat at the town of Point Pleasant in the State of Missouri, for said city of Cincinnati, and for said purpose purchased from appellant a ticket, in consideration of which the appellant agreed to safely convey said Pikey from said point in Missouri to said city of Cincinnati; that on

The Memphis and Cincinnati Packet Co. *v.* Pikey, Admx.

———— day ————————, while said boat was proceeding on its way to Cincinnati and when said steamboat "John K. Speed" was at a point on the Ohio river opposite the county of Dearborn, State of Indiana, which point is also opposite the county of Boone in the State of Kentucky, and while said Pikey was still a passenger on said boat, he was shot and mortally wounded by the second mate on said boat, from which wound he died in Dearborn county, Indiana, on the next day; that the death of said Pikey was caused by the negligence and carelessness of appellant, as alleged in the several paragraphs, and that said Pikey and the appellee were each wholly without fault and in no way contributed to the said injury or death in any way; that said Pikey left surviving him a widow and two children; that he was a citizen and resident of New Madrid county, Missouri; that appellee was duly appointed, by the probate court of said county, administratrix of his estate.

Appellant entered a special appearance and filed a motion supported by affidavits, to set aside the service of summons, which was overruled. The court, on the motion and affidavit of appellant, required appellee to file an undertaking for costs, which was approved. Thereupon appellant filed a special answer as to the jurisdiction of the court over the person of appellant, to which a demurrer was filed and sustained. Appellant filed a demurrer to each paragraph of complaint which was overruled as to the first, third, fifth, and sixth paragraphs and sustained as to the other paragraphs. Answer in four paragraphs was filed, the fourth paragraph being a general denial, a demurrer was filed and sustained to the first, second, and third paragraphs of answer, to all of which rulings proper exceptions were taken. The cause was tried by a jury and a verdict

returned for appellee, and, over a motion for a new trial, judgment was rendered against appellant.

Appellant assigns as error:

1. That the court had no jurisdiction of the person of the defendant.

2. The court had no jurisdiction of the subject-matter of the action.

3. The court erred in overruling appellant's motion to set aside the service of summons.

4. The court erred in sustaining the demurrer to appellant's plea to the jurisdiction of the court.

5. That the court erred in overruling the demurrer to each of paragraphs one, three, five and six of the complaint.

6. That the court erred in sustaining the demurrer to each of paragraphs one, two and three of the answer.

7. That the court erred in overruling the motion for new trial.

Appellant contends that the court below had no jurisdiction over the subject-matter of the action for this reason, that the injury was inflicted outside of the territorial limits of the State of Indiana, and within the State of Kentucky; that, therefore, section 284 (285), *supra*, has no application in this case; that the right of action, if any, must depend upon the laws of Kentucky and not upon the laws of this State. The theory of the defense is that this State has no jurisdiction over the Ohio river beyond low water mark on the Indiana side of the river. It is settled that low-water mark on this side of the Ohio river is the boundary line between this State and Kentucky. *Handly's Lessee* v. *Anthony*, 5 Wheat. 374; *Indiana* v. *Kentucky*, 136 U. S. 479; *Carlisle* v. *State*, 32 Ind. 55; *McFall* v. *Commonwealth*, 2 Met. (Ky.) 394.

It is provided, however, by an act of the common-

wealth of Virginia, entitled "An act concerning the erection of the district of Kentucky into an independent State (passed December 18, 1789,), that the use and navigation of the Ohio river, so far as the territory of the proposed State or the territory which shall remain within the limits of this commonwealth lies therein, shall remain free and common to the citizens of the United States; and the respective jurisdiction of this commonwealth and of the proposed State, on the river as aforesaid, shall be concurrent only with the States which may possess the opposite shores of said river." Revised Laws of Virginia, Vol. 1, p. 59; 1 G. & H. p. 57; 3 R. S. 1894, p. 886.

In *Handly's Lessee* v. *Anthony, supra,* the supreme court of the United States referring to this act, by Marshal, Chief Justice, said that "The compact with Virginia under which Kentucky became a State, stipulates that the navigation of and jurisdiction over the (Ohio) river shall be concurrent between the new States * which may possess the opposite shores of the said river."

This State has asserted this jurisdiction in section 2, article 14, of the constitution (Section 222, R. S. 1881; section 222, R. S. 1894), which declares that the State of Indiana "shall have concurrent jurisdiction in civil and criminal cases with the State of Kentucky on the Ohio river, and with the State of Illinois on the Wabash river so far as said rivers form the common boundary between this State and said States respectively." The general assembly has assumed the same jurisdiction. 1 G. & H. section 93, p. 190, section 96, p. 191; sections 1578, 1579 and 4207, R. S. 1881; sections 1647, 1648 and 5544, R. S. 1894, R. S. 1843, p. 66.

It has been uniformly held by this court that the State possesses jurisdiction for the enforcement of the civil and criminal laws of the State on the Ohio river,

where it constitutes the southern boundary of the State. Rorer Interstate Law, p. 343–4 ; *Carlisle* v. *State, supra; Dugan* v. *State,* 125 Ind. 130 (9 L. R. A. 321); *Welsh* v. *State,* 126 Ind. 71 (9 L. R. A. 664) ; *Sherlock* v. *Alling, Admr.,* 44 Ind. 184, and authorities cited. In *Sherlock* v. *Alling, Admr., supra,* a case like the one before us, this court held that section 284, R. S. 1881, (285), R. S. 1894, *supra,* was general and extended over all territory over which the State of Indiana has exclusive or concurrent jurisdiction, that it applies to cases where death is caused by wrongful acts or omissions on vessels while navigating the Ohio river where the same forms the boundary of this State. It is clear from the authorities cited, that this State had concurrent jurisdiction over the Ohio river at the point where it is alleged the death of appellee's intestate was caused by the wrongful acts of appellant. The only difference is that over the territory within the boundaries of the State the jurisdiction is exclusive, while on the Ohio river it is concurrent with Kentucky. It necessarily follows that the law which governs this case, including the service of summons and return, is the same as if the Ohio river was wholly within the State of Indiana, where it forms the southern boundary of the State. *Sherlock* v. *Alling, Admr.,* and authorities, *supra.*

Appellant further urges that the court below had no jurisdiction of the subject-matter of this action because appellee is not authorized to maintain an action for the death of her intestate under the laws of Missouri ; that appellee is only accountable to the court that appointed her ; that when the money is paid to appellee she takes it beyond the jurisdiction of the courts of this State, and within the jurisdiction of the probate court of Missouri for distribution in accordance with the laws of that State. This question was fully considered and decided

adversely to appellant's contention in *Jeffersonville,etc.*, *R. R. Co.* v. *Hendricks, Admr.*, 41 Ind. 48.

It is settled law in this State that the statute upon which this action is brought was intended to provide a remedy not only for the citizens of this State, but for the citizens of other states while passing through or residing within this State, and that such action may be maintained by a foreign administrator. *Jeffersonville, etc., R. R. Co.* v. *Hendricks, Admr., supra.* The fund, when recovered under this section of the statute, is held by the personal representative, whether domestic or foreign, as the trustee of an express trust; it must inure to the benefit of the widow and children, if any, and if not then to the next of kin. *Jeffersonville, etc., R. R. Co.* v. *Hendricks, Admr., supra*; *Dinnick* v. *Railroad Co.*, 103 U. S. 11. It would be an unjust reflection upon the courts of Missouri to say that when money recovered in such an action as this came into the hands of the administratrix charged with a trust of the most high and sacred character, they would not compel distribution as the law under which it was recovered directs.

Appellant insists that the court erred in overruling the motion to set aside the service of summons.

Section 316, R. S. 1881, which provides for service of summons upon corporations is as follows: "The process against either a domestic or foreign corporation may be served on the president, presiding officer, mayor, chairman of the board of trustees, or other chief officer (or, if its chief officer is not found in the county, then upon its cashier, treasurer, secretary, clerk, general or special agent); or, if it is a municipal corporation, upon its marshal; or, if it is an incorporated library company, upon its librarian; if none of the aforesaid officers can be found, then upon any person authorized to transact business in the name of such corporation; and if no such

person, officer, or agent be found in the county where suit is pending, process may be sent, for service, to any other county in the State where such person, officer, or agent may be found : *Provided, however*, That process shall not be served upon any such person, officer, or agent when he is plaintiff in the suit, but, in such cases, process shall be served upon some other such person, officer, or agent of the corporation than such plaintiff ; and in case the defendant be a foreign corporation, having no such person, officer, or agent resident in the State, service may be made in the same manner as against the other nonresidents."

Section 312, R. S. 1881, provides that in cases of nonresidents or persons having no permanent residence in the State, action may be commenced and process served in any county where they may be found.

The summons was served on appellant by reading to M. M. Deem and Charles Vinton, and delivering to each of them a copy of the summons ; at the time the same was read and the copies delivered to them they were on the steamboat "John K. Speed," and the boat was near the middle of the Ohio river, between low-water mark on the Indiana side and low-water mark on the Kentucky side of the river, but opposite Dearborn county, Indiana.   At the time of service Deem was the captain and Vinton was first chief clerk of the boat "John K. Speed," one of the boats navigating the Ohio and Mississippi rivers, owned and controlled by appellant, said Deem and Vinton were respectively the captain and first chief clerk of said steamboat, and agents of the appellant for receiving freight and passengers for shipment and transportation by appellant, and for making contracts therefor, for and on account of said appellant, at the cities of Aurora and Lawrenceburg in Dearborn county, and at other points in the State of Indiana, and

Vinton received for and transmitted money to appellant at said cities and at other points in the State of Indiana. The summons was also served on appellant by reading to John O'Tool, wharfmaster at the city of Lawrenceburg, and to Abraham Hill, the wharfmaster at the city of Aurora, at which wharfs said steamboat lands for receiving and discharging freight and passengers; and the sheriff's return on the summons states that "said O'Tool and Hill, being the agents of defendant at said Lawrenceburg and Aurora respectively, who received and discharged freight for defendant, and who made contracts at said cities for and on account of defendant for the shipment and transportation of freight, and who at said cities receive money for and transmit the same to defendant, said summons was served by reading the same to said O'Tool and Hill, and delivering to each of them a certified copy thereof, * * * there is no officer of said defendant in my bailiwick." Deem and Vinton were not residents of the State of Indiana. O'Tool resided at Lawrenceburg and Hill resided at Aurora.

The affidavits, so far as they relate to the service on O'Tool and Hill, are evasive, and do not state facts, but conclusions: They state that said O'Tool and Hill were not the agents, general, special, or otherwise, of appellant, but do not state that they were not authorized to transact business in the name of appellant, nor do the affidavits controvert the statement in the return, that O'Tool and Hill received and discharged freight for the defendant, and that they made contracts at the cities of Lawrenceburg and Aurora respectively for, and on account of, appellant, for the shipment and transportation of freight, and at said cities receive money for, and transmit the same to appellant.

We do not think the general statements and con-

clusions set forth are sufficient to overcome the return of the sheriff. The same do not contradict, and cannot be considered as contradicting the return of the sheriff. We are of the opinion that the service on O'Tool and Hill was service on the appellant, under the statutes of this State, and gave the court jurisdiction over the person of the appellant. The appellant transacts business at all the cities, towns and landings in this State, on the Ohio river, and this State has concurrent jurisdiction over the Ohio river, navigated by appellant's line of steamers, where the same forms the southern boundary of the State.

The court did not err in overruling said motion. *Toledo, etc., R. W. Co.* v. *Owen*, 43 Ind. 405; *St. Clair* v. *Cox*, 106 U. S. 350; Works Juris., 319–320..

This renders it unnecessary for us to determine concerning the service on Deem and Vinton.

What has been said disposes of the question presented by the fourth error assigned. The fifth error assigned calls in question the action of the court in overruling the demurrer to the first, third, fifth, and sixth paragraphs of complaint. As the sixth paragraph was abandoned by appellee at the trial, and the recovery had upon the other paragraphs, it is not necessary to consider that paragraph. The grounds of demurrer were:

1. That the court has no jurisdiction of the person of the defendant:

2. That the court has no jurisdiction of the subject-matter of the action:

3. That neither one of the paragraphs of complaint states facts sufficient to constitute a cause of action against defendant.

The questions presented by the first and second grounds of demurrer have already been determined.

We do not think the objections urged to the complaint, under the third ground of demurrer, are tenable.

The fourth paragraph of answer was a general denial, and all the evidence that could have been given under the first, second and third paragraphs of answer could be given under the fourth; therefore, the error of the court, if any, in sustaining the demurrer to said paragraphs was harmless.

The first cause assigned for a new trial is that the verdict is not sustained by sufficient evidence.    There is evidence which supports the verdict on every material point, and, under the firmly settled rule, this court will not reverse the case on the weight of the evidence. *Lawrence* v. *VanBuskirk*, 140 Ind. 481, and authorities cited.

The third reason for a new trial is that the damages assessed by the jury are excessive, and the fourth reason is that the assessment of the amount of recovery is too large.    The damages were assessed at $5,000.00.  Under section 284, (285), *supra*, the damages may be assessed at any amount not exceeding $10,000.00.    A new trial cannot be granted for this reason, because the damages do not appear at first blush to be grossly excessive. *City of Evansville* v. *Worthington*, 97 Ind. 282; *City of Aurora* v. *Bitner*, 100 Ind. 396 (399); Thornton Ind. Prac. Code, note 16, p. 236.

The fifth reason for a new trial is error of law occurring at the trial of the cause, and excepted to at the time. It is claimed that the court erred in permitting appellee to give evidence as to the earnings of the deceased the last year or two of his life.  The bill of exceptions does not show that any exception was reserved to this ruling of the court, and this question is, therefore, not in the record.

Appellant offered to prove, by one Cowlishaw, a competent witness, while on the stand, that the class of

men usually employed on steamboats as rousters are quarrelsome, violent, and a fighting class of people, which offered evidence was excluded by the court.

We are unable to see how such evidence would avail appellant in this case. If appellant, a common carrier negligently employed a quarrelsome, violent, and fighting crew, and a passenger is injured on that account, under the circumstances set forth in the complaint, without fault on his part, it would be no defense that the class of men usually employed on steamboats was of that class.

Appellee, on the trial, read to the jury the depositions of three witnesses taken by her. When appellee was about to read the cross-examination, appellant objected, stating to the court, as the reason therefor, "that the cross-examination was testimony for defendant, and as such is controlled by the defendant, the same as if the witnesses had testified from the stand, and defendant had refused to cross-examine them. It is optional with the defendant to have the cross-examination of the witness read to the jury." This objection the court overruled, and permitted the cross-examination of the witnesses to be read to the jury. This ruling of the court below was correct. The depositions had been taken on behalf of appellee, appellant had attended the taking of the depositions, and cross-examined the witnesses, and could no more prevent, by objection, the cross-examination being read at the trial, than it could ask the court to strike out, and direct the jury to disregard, evidence given on cross-examination of a witness at the trial of the cause.

Appellant claims that the court erred in suppressing questions and answers of the depositions of divers witnesses on motion of appellee, and in refusing to suppress questions and answers of the depositions of divers wit-

nesses on motion of appellant.    The brief of appellant does not refer to any page or line of the transcript where any such rulings were made by the court, and under the long and well-settled practice of this court, the questions arising upon such rulings, if any, are waived.

Another cause assigned for a new trial is that the court erred in giving instructions 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10, asked by plaintiff, to the jury.

Another cause assigned is that the court erred in refusing to give thirty instructions, giving the number of each, asked by defendant, to the jury.

It is not claimed by appellant that there was error in either giving each instruction asked by appellee, or in refusing to give each instruction asked by appellant. Some of those given are admitted to be correct by a failure to point out any objection thereto, and some of those refused are admitted to have been properly refused by a failure to show in what respect the court erred in its refusal to give the same.

To render the first of these specifications available as a cause for a new trial, all the instructions named in such specification must be incorrect, and to render the specification as to the thirty instructions available as a cause for a new trial, all such instructions must be correct. *Lawrence* v. *VanBuskirk, supra,* and authorities cited.

Appellant has no cause to complain of the court's modifying instructions 9, 11, 13, 18, and 21, asked by appellant, and giving them, as modified, to the jury.

Instruction 21, as asked, was clearly erroneous. It was the province of the jury, and not of the court, on the facts as stated in the instruction as asked, to determine whether or not the deceased was guilty of contributory negligence.    If error was committed in giving

instruction 21 as modified, it was in favor of appellant, and one of which appellant would have no right to complain.

There is no available error in the record.

Judgment affirmed.

Filed April 25, 1895; petition for rehearing overruled October 17, 1895.

NOTE.—As to the liability of a master for assaults by servants, including the matter of assault upon a passenger, see note to *Davis* v. *Houghtelin* (Neb.), 14 L, R. A. 737; also, *Atchison, T. & S. F. R. R. Co*. v. *Henry* (Kan.), 29 L. R. A. 465, and cases there referred to, as well as *Goodloe* v. *Memphis & C. R. R. Co.* (Ala.), 29 L. R. A. 729.