COLUMBIA RIVER PACKERS' ASS'N v. McGOWAN et al.

(Circuit Court, W. D. Washington, W. D.   September 10, 1909.)

No. 1,385.

1. STATES (§ 12*)—BOUNDARY BETWEEN WASHINGTON AND OREGON—COLUMBIA RIVER.

The boundary between the states of Washington and Oregon, as fixed by the Supreme Court in the case of Washington v. Oregon, 214 U. S. 205, 29 Sup. Ct. 631, 53 L. Ed. 969, at the mouth of the Columbia river follows the channel on the north side of Sand Island as it exists at the present time.

[Ed. Note.—For other cases, see States, Cent. Dig. § 8; Dec. Dig. § 12.*]

2. COURTS (§ 266*) — FEDERAL COURTS — TERRITORIAL LIMITATIONS—BOUNDARY BETWEEN WASHINGTON AND OREGON—CONCURRENT JURISDICTION OVER COLUMBIA RIVER.

Act Feb. 14, 1859. c. 33, §§ 1, 2, 11 Stat. 383, admitting the state of Oregon into the Union, which provides that said state shall have jurisdic-

tion in civil and criminal cases on the Columbia and Snake rivers concurrently with states and territories of which those rivers shall form a boundary in common with such state, vests the courts of Washington with jurisdiction of cases arising on the Columbia river where it forms the boundary between the states, and by the act creating the Western district of Washington the federal courts therein are given jurisdiction over the same territory concurrently with the courts in Oregon, and it is immaterial that the Constitution of Washington makes no mention of such jurisdiction beyond its boundaries.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 806, 807; Dec. Dig. § 266.*]

3. COURTS (§ 266*)—FEDERAL COURTS—TERRITORIAL LIMITATIONS—BOUNDARIES —JURISDICTION OVER COLUMBIA RIVER—"ON."

While such jurisdiction extends only to things "on" the river, and not to permanent structures attached to the riverbed within the other state, it includes a suit relating to floating structures used in connection with fish nets in the river, although anchored by means of weights.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 806, 807; Dec. Dig. § 266.*

For other definitions, see Words and Phrases, vol. 6, pp. 4960–4966; vol. 8, p. 7737.]

4. INJUNCTION (§ 129*) — VOLUNTARY DISMISSAL — RIGHT OF DEFENDANT TO REMEDY ON INJUNCTION BOND.

Where a federal court in Washington granted a restraining order enjoining a defendant from using floating structures in the Columbia river on the Oregon side, which it had power to do under the statutes giving concurrent jurisdiction to the courts of both states, although the structures were then erroneously supposed to be within the boundary of Washington, it will not dismiss the suit at the instance of complainant, and thus deprive defendant of any remedy it may have on the injunction bond.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 279–281; Dec. Dig. § 129.*]

In Equity. On motion by complainant to dismiss.

C. W. & G. C. Fulton, for complainant.

Welsh, Welsh & O'Phelan, for defendants.

W. P. Bell, Atty. Gen., State of Washington, amicus curiæ.

DONWORTH, District Judge. This is a suit in equity begun originally in this court in July, 1908. The complainant is a corporation organized under the laws of the state of Oregon, and the defendants are citizens and residents of the state of Washington. The object of the suit is to obtain an injunction restraining the defendants from placing in any of the waters of the Columbia river in front of or adjacent to certain premises described as sites Nos. 2 and 3 on Sand Island, and from maintaining in front of said premises in said waters any obstruction whatever, particularly certain obstructions alleged in the bill to be there maintained by the defendants, and from interfering with the free and uninterrupted ingress to and egress from said premises. There is also a prayer that all obstructions placed in said waters in front of said premises be abated, and that the defendants be required to remove the same and for general relief. The amended bill filed August 11, 1908, alleges that the United States is the owner of "that certain tract of land situated and located within the county of Pacific in the state of Washington, the same being an island in the Columbia

river near the mouth of said river, which was and is generally known and named upon all official records, maps, and plats as Sand Island," and that, pursuant to an act of Congress granting authority to the Secretary of War for that purpose, the complainant holds a valid lease for those certain portions of Sand Island designated on the maps and plats of the government survey as sites Nos. 2 and 3 for the term of three years from May 1, 1908, "together with the tide lands, water rights, fishing rights, and riparian rights adjacent thereto to the navigable channel of said Columbia river." It is further alleged that:

"Said sites 2 and 3 aforesaid are on the south side of said Sand Island, and are on the north shore of the main ship channel of the Columbia river, and within the jurisdiction of this court, and within the Western district and Western division thereof."

It is also averred that:

"Under the laws of the United States the said waters are required to be kept free from obstructions, and that, by virtue of said laws and said lease aforesaid, plaintiff is entitled of right to have said waters and said channel of said river free and unobstructed, and is entitled of right to the free, unobstructed ingress to and egress from said premises, and is entitled of right to the exclusive right of operating seines for the purpose of catching salmon fish from said shores in the waters of said river and landing the same on said shores."

The acts of the defendants constituting the alleged interference with complainant's rights are set forth in the amended bill as follows:

"That, in order to operate seines in front of said sites 2 and 3, it is necessary that the waters and channel of said river be free and unobstructed, for that it is necessary to lay each seine out into the waters of said river a distance of 200 or 300 fathoms; each seine being about that long, and to permit the same to drift with the tide and current, and then to haul the same in on the shore. That plaintiff was proceeding to so operate its said seines, under its licenses aforesaid and under the same lease aforesaid, when the defendants herein wrongfully and unlawfully and in violation of plaintiff's rights and in violation of the laws of the United States which prohibits the placing of any obstructions in the navigable waters of said river, and without the consent of plaintiff, but against plaintiff's consent, placed in the channel of said navigable waters of said Columbia river directly in front of plaintiff's leased premises, and in front of said sites 2 and 3 aforesaid, certain obstructions to the navigation of said waters, consisting of large stones to which were attached wire cables and chains and large timbers for a float or buoy. That said obstructions were 7 in number, and were placed in the waters of said river about 50 to 100 feet from the shore, and about 200 or 300 feet apart. That said stones and anchors, or weights, were large and of great weight, and were so placed that plaintiff could not operate its seines in the waters of said river, and could not land its seines or either thereof on the shores of said leased premises, and absolutely prevented plaintiff from operating seines on said lands and excluded the public generally from operating either gill nets, drift nets, or seines in the waters of said river. That plaintiff thereafter, and on the 2d day of July, 1908, at great labor and expense and time, removed all of said obstructions, and was proceeding to operate its seines in said waters in front of said premises and land the same on the shores thereof, when the said defendants again on the 4th day of July, 1908, wrongfully and unlawfully, and in violation of the laws of the United States aforesaid and against plaintiff's consent, placed six more of said obstructions in front of said premises aforesaid in practically the same position as those plaintiff removed; that is to say, that each of said obstructions consisted of a large stone or stones of great weight to which were attached wire cables and chains, and the same were placed on the bed of the river, and the float or buoy of large timbers were at-

172 F.—63

tached at the end of said cables, and that said obstructions were placed from 50 to 100 feet from the shore of said sites 2 and 3, and from 200 to 300 feet apart, and in such a position as to absolutely prevent plaintiff from operating its said seines, and to prevent plaintiff from landing its seines or any seine on said shore. That said obstructions are in the navigable waters of said river, and are so placed as to prevent the free ingress to·and egress from said premises, and interferes with and prevents free access to said premises. That the defendants threaten to, and will, unless restrained by this court, continue to place other of said obstructions in said waters in front of said premises, and threaten to continue to use and employ the same and will do so unless restrained by this court. That said obstructions so placed and those threatened to be placed are not placed for the purpose of trade or commerce or for any practical use, but are placed there for the purpose of harassing and annoying plaintiff and preventing plaintiff from operating its seines and interfering with and obstructing the free ingress to and egress from said premises, and none are placed there in good faith, and each is an obstruction to the navigation of said river. * * * That the said trespass herein complained of is continuous, and the defendants will, unless restrained, continue daily to place said obstructions and other obstructions to the operation of plaintiff's seines, and will daily continue to exercise the exclusive right of fishery in front of said premises, and will continue to harass and annoy plaintiff and prevent plaintiff from ingress to and egress from said premises."

On the filing of the bill the court fixed a time for hearing the application for an injunction pending the suit, and at the same time issued a restraining order restraining the defendants "from in any manner interfering with the free ingress to and egress from, and from placing or maintaining any obstruction or anchor or killock, or any timber, log, or appliance whatever that will interfere with the use of a seine floating upon and navigating the waters of the Columbia river in front of or adjacent to sites Nos. 2 and 3 on Sand Island." This order has not been dissolved. At the time of its issuance complainant was required to file an injunction bond in the penal sum of $2,000.

Thereafter the defendants appeared and filed separate answers, wherein, after denying and admitting certain of the allegations of the amended bill, extensive affirmative matter is set forth. Briefly stated, the allegations of the defendants are to the effect that their acts in the premises were and are bona fide operations for the purpose of catching salmon fish by means of set nets under licenses issued by the fish commissioner of the state of Washington; that the objects maintained by them in the river in front of Sand Island were below the line of extreme low tide, and were put and kept there for the purpose of operating said set nets and marking and holding the location thereof; that each set net was located by a stone anchor weighing about 300 pounds, to which was attached a piece of chain about five feet long clamped to a wire rope about 25 feet long; and that to this was attached a cedar buoy about 4 feet long and 8 inches square, upon which buoy was securely fastened the license number of each location. The affirmative portions of the answers set forth with a good deal of detail the facts upon which the defendants base their claim of the right to maintain and operate nets, and to prosecute the business of salmon fishing in this location. They further allege wrongful acts in the premises on the part of complainant, and pray affirmatively for relief by way of injunction for the purpose of preventing any interference by complainant with their set nets and necessary appliances.

There are allegations of diverse citizenship and other allegations showing the purpose of the defendants to set forth a complete cause of action on their part against the complainant.

. At the time of the commencement of the suit and the issuance of the restraining order and also at the time of the filing of the amended bill and of the answers, both parties assumed and believed that the boundary between the states of Oregon and Washington was in the middle of the main ship channel of the Columbia river south of Sand Island, thus placing the island and its shores and the waters involved in this controversy wholly within the state of Washington. The location of the interstate boundary was at that time in litigation in a suit begun in the Supreme Court on February 26, 1906, by the state of Washington against the state of Oregon. That suit was decided by an opinion delivered November 16, 1908, and by a supplemental opinion delivered May 24, 1909. Washington v. Oregon, 214 U. S. 205, 29 Sup. Ct. 631, 53 L. Ed. 969. Since the final decision of the Supreme Court, complainant has moved this court to dismiss the pending suit for want of jurisdiction on the ground that the suit is a local one and concerns real estate and property situated in the state of Oregon, and therefore not within the Western district of Washington. The motion is resisted by the defendants. The question of jurisdiction has been fully argued, and is now to be decided.

In view of the decision of the Supreme Court in the boundary suit between the two states, I must hold that Sand Island and the shores and waters constituting the place involved in this controversy are south of the boundary line and lie within the state of Oregon. Counsel for defendants have urged with much vigor that the present Sand Island is not the same island as the one described by that name in the opinion of the Supreme Court. They assert that the old Sand Island entirely disappeared several years ago, and that the present island, bearing the same name, formed later by the action of the tides and currents, is north of the line which the Supreme Court has fixed as the boundary. They ask a reference to a master for the purpose of ascertaining the facts in this regard. The answer to this contention is that the Supreme Court has clearly decided that the boundary is the channel north of the present Sand Island. In the opinion on petition for rehearing it is said:

"There are practically two matters presented—one whether the boundary near the mouth of the Columbia river was and is the channel north of Sand Island. We held that it was, and with that conclusion we are still satisfied. It is unnecessary to restate the reasons therefor." Washington v. Oregon, 214 U. S. 205, 29 Sup. Ct. 631, 53 L. Ed. 969.

There is no doubt whatever that this decision fixes the boundary north of the Sand Island that now exists, and I so hold.

This brings us to the further inquiry whether this court has jurisdiction to hear and determine this cause and to enforce its decree therein by virtue of the legislation of Congress relating to concurrent jurisdiction on the Columbia river. In Nielsen v. Oregon, 212 U. S. 315, 316, 29 Sup. Ct. 383, 53 L. Ed. 528, that legislation is briefly summarized as follows:

"By paragraph 1 of the act of Congress of March 2, 1853 (chapter 90, 10 Stat. 172), all that part of the territory of Oregon lying north of the 'main channel of the Columbia river' was organized into the territory of Washington, and by paragraph 21 of the same act it is provided 'that the territory of Oregon and the territory of Washington shall have concurrent jurisdiction over all offenses committed on the Columbia river, where said river forms the common boundary between said territories.' Section 1 of the act of Congress admitting Oregon into the Union (Act of February 14, 1859, c. 33, 11 Stat. 383), after describing in detail the boundaries of the state, provides: 'Including jurisdiction in civil and criminal cases upon the Columbia river and Snake river, concurrently with states and territories of which those rivers form a boundary in common with this state.' And in paragraph 2 it is said 'the state of Oregon shall have concurrent jurisdiction on the Columbia and all other rivers and waters bordering on the said state of Oregon so far as the same shall form a common boundary to said state, and any other state or states now or hereafter to be formed or bounded by the same.'"

The Constitution of the state of Washington defines the state boundaries and makes no mention of concurrent jurisdiction on the Columbia river, but, as will be shown later, the state has not lost such jurisdiction by reason of its failure to assert it by positive enactment. The territorial jurisdiction of this court is defined in the act dividing Washington into two judicial districts. That act provides that certain counties lying east of the Cascade Mountains with the waters thereof shall be detached from the judicial district of Washington, and "that the residue of said state of Washington with the waters thereof shall hereafter be the Western district of Washington." Act March 2, 1905, c. 1305, 33 Stat. pt. 1, 824 (U. S. Comp. St. Supp. 1907, p. 175). This language is ample to vest in this court as broad a jurisdiction over that part of the Columbia river involved in this controversy as any state court might exercise, and is to be read in connection with the former legislation of Congress above mentioned.

In Nielsen v. Oregon, supra, it is said:

"By the legislation of Congress the Columbia river is made the common boundary between Oregon and Washington, and to each of those states is given concurrent jurisdiction on the waters of that river. How that jurisdiction is to be exercised, what limitations there are, if any, upon the power of either state, is not in terms prescribed. It is true in the first section of the act admitting Oregon the jurisdiction was apparently limited to 'civil and criminal cases,' but in the second section of that act there was given in general terms 'concurrent jurisdiction.' In Wedding v. Meyler, 192 U. S. 573, 584, 24 Sup. Ct. 322, 48 L. Ed. 570, construing the term 'concurrent jurisdiction,' as given to Kentucky and Indiana over the Ohio river, this court, reversing the Court of Appeals of Kentucky, said: 'Concurrent jurisdiction, properly so called, on rivers is familiar to our legislation, and means the jurisdiction of two powers over one and the same place. There is no reason to give an unusual meaning to the phrase. See Sanders v. St. Louis & New Orleans Anchor Line, 97 Mo. 26, 30, 10 S. W. 595, 3 L. R. A. 390; Opsahl v. Judd, 30 Minn. 126, 129, 130, 14 N. W. 575; J. S. Keator Lumber Company v. St. Croix Boom Corp., 72 Wis. 62, 38 N. W. 529, 7 Am. St. Rep. 837, and the cases last cited. The construction adopted by the majority of the Court of Appeals seems to us at least equally untenable. It was held that the words "meant only that the states should have legislative jurisdiction." But jurisdiction, whatever else or more it may mean, is jurisdiction in its popular sense of authority to apply the law to the acts of men. Vicat Vocab. sub. v. See Rhode Island v. Massachusetts, 12 Pet. 657, 718, 9 L. Ed. 1233. What the Virginia compact most certainly conferred on the states north of the Ohio was the right to administer the law below low-water mark on the river, and, as part of that right, the right to serve process there with effect. State v. Mullen, 35 Iowa, 199, 205, 206.'

Undoubtedly one purpose, perhaps the primary purpose, in the grant of concurrent jurisdiction was to avoid any nice question as to whether a criminal act sought to be prosecuted was committed on one side or the other of the exact boundary in the channel; that boundary sometimes changing by reason of the shifting of the channel. * * * But, as appears from the quotation we have just made, it is not limited to this. It extends to civil as well as criminal matters, and is broadly a grant of jurisdiction to each of the states."

In State v. Mullen, 35 Iowa, 199, the court sustained the conviction in Iowa of a person charged with maintaining a nuisance on a boat in the Mississippi river, although the boat was for a portion of the time resting on the soil of an island near to the Illinois shore, and within the territorial limits of Illinois. The rights of concurrent jurisdiction on the Mississippi river were substantially the same as on the Columbia. The court said:

"If this boat is so upon the river that the person maintaining it there is amenable to the laws of this state, and our courts have jurisdiction to try and punish him for keeping a nuisance, it is a logical sequence that this jurisdiction must draw after it everything necessary to make it effective and complete. We must either concede the right to abate the nuisance, or deny the right to try and punish the defendant for maintaining it. A denial of the 'drop of blood' is equally a denial of the 'pound of flesh.' It is claimed that to allow the officers of this state to seize this boat would work an invasion of the sovereignty of the state of Illinois. If the defendant may be tried by the courts of this state for an act done upon the boat, it must follow that the officers of this state may arrest him upon the boat for the purpose of bringing him before the court for trial. It would be inconsistent to say that the locus of a crime is within the jurisdiction of a court for the trial of an offense, and yet beyond it for the arrest of the offender. If the officers of this state may lawfully go upon the boat for the arrest of the defendant, why may they not lawfully do so for the seizure of the boat itself? If one is not an invasion of the sovereignty of the state of Illinois, why is the other?"

As above shown, this case is cited with approval in Wedding v. Meyler, 192 U. S. 573, 585, 24 Sup. Ct. 322, 48 L. Ed. 570. In the Annie M. Smull, 2 Sawyer, 226, Fed. Cas. No. 423, which is perhaps an extreme case, District Judge Deady sustained the jurisdiction in admiralty of the district court of Oregon over a vessel moored at a wharf at Kalama on the Washington shore. See, also, in addition to cases cited above, Memphis Packet Co. v. Pikey, 142 Ind. 304, 40 N. E. 527, and State v. Faudre, 54 W. Va. 122, 46 S. E. 269, 63 L. R. A. 877, 102 Am. St. Rep. 927. Nor was it necessary that the state of Washington should by its Constitution or otherwise assert its concurrent jurisdiction by expressly accepting the congressional enactments. "It must be remembered that this was legislation, and when it is enacted by the sovereign power that new states, when formed by that power, shall have a certain jurisdiction, those states as they come into existence fall within the range of the enactment and have the jurisdiction." Wedding v. Meyler, 192 U. S. 573, 583, 24 Sup. Ct. 322, 48 L. Ed. 570. It is, of course, clear, as held in the case last cited, that the concurrent jurisdiction given is jurisdiction "on" the river, and does not extend to permanent structures attached to the riverbed and within the boundary of the other state. Complainant's counsel urge that the present case does not involve things "on" the river, and contend that the cases of Gilbert v. Moline Water Power Co., 19 Iowa, 319, and M. & M. Railroad Co. v. Ward, 67 U. S. 485, 17 L. Ed. 311,

are controlling. To me, however, it seems clear that the parties in this case are here contending about things "on" the river. I have set forth with some fullness their respective allegations and claims, and do not consider any extended reasoning necessary to demonstrate that the subject-matter of the litigation is within both the letter and the spirit of the congressional enactments. The only objects involved which by any possible theory could be considered permanent structures are the stone anchors, and I cannot assume that the stones at the bottom of the river are the only or even the principal things concerned in the controversy. If it should be held that the mere fact of anchoring a floating object takes it out of the grant of concurrent jurisdiction, there would be little left of that jurisdiction. It is not necessary, in order to uphold the jurisdiction, that the court have power to administer all of the relief asked. It is sufficient if the facts alleged show a substantial controversy between the parties within the jurisdiction of the court. It is also urged that the case of Roberts v. Fullerton, 117 Wis. 222, 93 N. W. 1111, 65 L. R. A. 953, is in point, and is opposed to the views above stated. The question there involved, however, was chiefly legislative rather than judicial jurisdiction, and, were it not so, I should in any event feel bound by the decisions of the Supreme Court to sustain the jurisdiction of this court in the present case. Many nice questions must arise from conflicting state legislation in these cases, and I express no opinion at this time as to what law defines the rights of the parties at the place in controversy. But, as between courts of concurrent jurisdiction, the court that first acquires jurisdiction holds it to the exclusion of all others. The question as to what law will be the rule of decision between the parties relates to the merits, and not to the jurisdiction.

If at the time of the commencement of this action the court possessed the definite knowledge of the actual location of the state boundary which it now has, it is perhaps probable that in the exercise of judicial discretion, and with due regard for the comity of courts, the restraining order and injunction applied for would have been refused, leaving complainant to seek a remedy in the courts sitting in the state of Oregon. But a different situation is now to be met. By reason of the action of complainant in beginning suit in this court and obtaining the restraining order, the defendants have been prevented for an entire year from making any use of such nets and appliances as they may have had or may have purposed to have on the premises. If it should develop that they are in the right of the controversy (which is obviously a thing that cannot be known at this time), they should not be deprived of such remedy as they may have under the injunction bond or otherwise for yielding obedience to the orders of a court which, under the legislation of Congress, was a court of competent jurisdiction.

Numerous reasons may be assigned for the action of Congress in granting concurrent jurisdiction to new states bounded by the great rivers; and, though there are obvious difficulties, the conveniences far outweigh the disadvantages. The circumstances of the present case vindicate the wisdom of the enactment. Valuable rights being

in controversy in a situation near to the boundary line between the two states, and there being no process other than the writ of injunction that would prevent the use of force in the assertion of the diverse claims, this suit was brought in this court on the assumption that the location was within its jurisdictional limits. In my opinion the grant of concurrent jurisdiction sustains the right of this court to hear and determine the controversy and to enforce its decree, regardless of the fact that by judicial determination the actual boundary is now found to be so situated as to place the location of the controversy in the other state. To decline to retain jurisdiction of this suit would be to refuse to apply the congressional enactment to a case peculiarly within the reason for its existence.

The motion to dismiss is denied.